### ENOCH P. DAVIS *versus* CITY OF BANGOR.

The provisions of the R. S., of 1841, c. 25, §§ 57 and 89, relating to highways, apply to obstructions placed upon or over a street or road, as well as to inherent defects in its structure.

The county, town or persons who are obliged by law to repair a highway, are criminally liable for defects in or upon the same, and for neglects in the performance of their statutory duties in reference thereto.

The liability of a town for damages arising from a defective highway, depends upon proof of the same facts that would render it liable to indictment; and in all cases where it may be held for damages it may be indicted.

A defect, or a want of repair, is either inert matter incumbering the highway upon or over it or structural defects, endangering public travel; and, for injuries arising therefrom, the parties obliged by law to keep it in repair are civilly liable.

Nuisances may be committed by the unlawful use of a highway, for which those committing them may be liable civilly to persons who suffer special damage therefrom, and they may be punished criminally therefor by indictment. The carrying of an unusual weight with an unusual number of horses; the driving of a carriage through the crowded street with dangerous speed; the selling by auction in the public thoroughfares; the congregation of carts in the streets and the collecting of crowds by violent and indecent language, &c., have been held to be nuisances of this kind, because annoying to the community and dangerous to the traveling public.

But towns are not responsible for nuisances of this nature, arising from the unlawful use of the highway without their knowledge or assent, the road, *as a road*, being "safe and convenient."

A team temporarily stationary in a street or road, under the charge of the owner or driver, is not a defect or want of repair to be amended, nor an obstruction to be removed, and the town or city is not liable for injuries occasioned thereby.

While A. was driving his horse harnessed to a chaise, over a bridge, the horse took fright at a tree, on a wagon which was standing there temporarily in charge of the driver, ran away, overturned the chaise and injured A.; — *Held*, that the town was not liable therefor either civilly or criminally.

A city is not liable for an injury occasioned by teams standing on a bridge or street for market and waiting for purchasers, under the care of their drivers or owners.

They are not an "obstacle natural or artificial," which the surveyor of highways is authorized by law to remove.

*It seems*, that the owners of the teams might, under some circumstances, be liable for injuries thus caused.

Municipal officers cannot bind their town or city by their individual assent to the wrongful acts of others.

Davis *v.* Bangor.

EXCEPTIONS from *Nisi Prius*, HATHAWAY, J., presiding.

This was an action of the case to recover damages for an injury received by the plaintiff, by the upsetting of his chaise, in consequence of his horse taking fright upon a bridge in Bangor. Much testimony was introduced on both sides. The verdict was for the plaintiff and the defendants excepted. The cause was argued at the law term of the Court held at Bangor, in July, 1856. The facts of the case are fully stated in the opinion of the Court.

After the evidence was in, the presiding Judge was requested by counsel for defendants to give the following instructions to the jury:—

1st. That the city of Bangor is not liable for obstructions in the streets and on the bridges, caused by teams loaded with trees for the market, and under the care of the drivers or owners of the teams.

2d. If the jury are satisfied from the evidence, that the injury complained of, was occasioned by teams standing on the bridge for the market, and awaiting for purchasers, and under the care of the drivers or owners, the city is not liable in this action.

3d. That streets are made as well for the transaction of business on them as for travel, and that the city of Bangor is not liable for any injury received in consequence of obstructions in the streets, in the transaction of business.

4th. That the charter and ordinances of the city do not impose on the city any additional legal liabilities and obligations to make and repair highways.

5th. That if the plaintiff could see whatever obstructions there were on the bridge before he entered upon it, it is evidence of want of ordinary care on his part that he drove among them, and he cannot recover in this action.

6th. That if the plaintiff entered on the bridge to the left of the middle of the traveled part of the bridge, and received the injury in consequence of driving on the left of the middle of said bridge, he cannot recover.

7th. That if the right of the middle of the traveled part of

the bridge was obstructed with teams in the transaction of business, so that he could not pass on that side, it was his duty to have stopped and waited until the obstructions were removed, or have gone round over one of the other bridges; and that if he chose to try his luck, and go over on the left side of the middle of the traveled part of the bridge, he cannot recover in this action.

8th. That if the jury are satisfied that the horse shied at the evergreen tree, standing as testified to by the witnesses, and the injury occurred in consequence of the horse so shying, the plaintiff cannot recover in this action.

9th. That the city must have had reasonable notice of the actual location of these very teams, or the city is not liable.

The Judge presiding, did not give the instructions requested, any further than they are embraced in the following, given by him, to wit:—

He instructed the jury, as requested by defendants' attorney, that the charter and ordinances of the city did not impose on defendants any additional legal liabilities and obligations to make and repair highways; and he also instructed them generally concerning the duties of towns and cities to keep their highways, streets and bridges, in repair, safe and convenient for travelers, &c.; and concerning their liabilities for injuries and damages occasioned by defects therein; and also upon the subject of notice to defendants of such defects; and also concerning the use of ordinary care by plaintiff in driving, &c.; and also concerning what constituted ordinary care. And upon all these subjects the instructions were unexceptionable. And he also instructed them, that towns and cities being required, by law, to keep their highways in repair, so that they might be safe and convenient for travelers, could not, of course, be justified in establishing any permanent or continued obstruction in one of their highways, which would render it unsafe and dangerous for travelers. That the law had not prescribed what imperfections in a road would constitute the defect referred to in the statute. That it was a fact for the jury to settle, what condition of the road

would render it safe and convenient, or otherwise, which must be determined by them from the evidence in the case. That highways and streets are made for passage, and for the trans- action of business, such as the circumstances of the place might require. That although a street might be narrow, and only of sufficient width for passage, yet persons in the ordi- nary transactions of business, had the right to stop at the stores, shops and dwellings thereon, and unload and load their teams and carriages; and although, by so doing, they might occasion a temporary obstruction of the ordinary travel, yet it would not be any such obstruction as would render the city liable as for a defect. But if the city government au- thorized persons with their teams and wagons to occupy a portion of such street or a bridge, and make it a customary stand, day after day, during the season of their business, for trade with their customers, and it was by them so continu- ously occupied; or if it was occupied by them without express authority from the city government, but with their knowledge, and without any objection on their part, or interference there- in; and the jury believed from the evidence that the city (the defendants,) assented to such use and occupation; that it would be for the jury, from the evidence in the case, to deter- mine whether or not such occupation of the street or bridge was an obstruction, which would render it unsafe for travelers and constitute a defect therein, which would render defend- ants liable for injuries and damages occasioned thereby.

The verdict was for plaintiff, $500, and the jury also found specially as follows, to wit:—

"We are satisfied from the testimony, that the horse took fright from the standing tree, which might be further increas- ed by being whipped by the bushes on the other loads."

To the preceding rulings, instructions and refusals of the Court, defendants excepted.

*Waterhouse,* for defendants, cited *Thompson* v. *Bridgwater,* 7 Pick. 188; *Smith* v. *Smith,* 2 Pick. 621; *Howard* v. *North Bridgwater,* 16 Pick. 189, 190; *Adams* v. *Carlisle,* 21 Pick.

146; *Palmer* v. *Barker* 11 Pick. 338; *Kennard* v. *Barton*, 25 Maine, 39.

*J. A. Peters,* for plaintiff, cited 7 Maine, 442; 11 Maine, 271; 21 Maine, 29; 3 Pick. 269; 26 Maine, 241; 13 Met. 292.

APPLETON, J.—On the morning of the day when the injury occurred, to recover compensation for which this action is brought, a large evergreen was brought to Bangor market. It "was standing erect in the wagon," with the horses attached, and under the care of the driver. The wagon was on the Kenduskeag bridge, but it "had not been there a great while" when the plaintiff's horse in passing over the bridge was frightened by the tree, which fright, "being further increased by the bushes on other loads," he ran, overturning the chaise in which the plaintiff with his wife was riding, who was thereby severely injured.

It is not denied that the plaintiff was in the exercise of ordinary and common care, nor that the injury occurred upon a bridge which the city was bound to keep in good repair, nor that the bridge, so far as regards its structure or its surface, was in good repair, unless the loaded team, standing as before described, is to be regarded as a defect or want of repair. The question presented is, whether a wagon loaded with ornamental or other trees, standing for sale in a street, with the horses attached and under the care of the driver, constitutes a "defect or want of repair" for which the city would be indictable or liable for damages resulting therefrom, the road being in other respects "safe and convenient."

The duties and obligations of the town in reference to the public highway are derived from statute, and are restricted and limited by its express enactments.

By R. S., 1841, c. 25, § 57, all highways, &c., are to be "kept in repair and amended from time to time, that the same may be safe and convenient for travelers," &c.; in default

thereof, the town in which such neglect of duty occurs is made liable to indictment, &c.

By § 89, any person receiving "any bodily injury," or suffering "any damage in his property through any defect or want of repair," &c., "may recover in a special action of the case, of the county, town or persons who are by law obliged to repair the same, the amount of damages sustained thereby, if such county, town or person had reasonable notice of the defect or want of repair."

From these provisions, it is apparent, that the road, as such, should be safe and convenient; that the statute applies as well to obstructions placed upon as to defects inherent in the structure of the road. The stick of timber, in *Springer* v. *Bowdoinham*, 7 Maine, 442; the rope extended across the street, in *French* v. *Brunswick*, 21 Maine, 29; the miry watering place by the road side, in *Cobb* v. *Standish*, 14 Maine, 198; the stones left in the road, in *Bigelow* v. *Weston*, 3 Pick. 267; the awning projecting over, or the aperture in the sidewalk, in *Drake* v. *Lowell*, 13 Met. 292, and *Bacon* v. *Boston*, 3 Cush. 174; drifts of snow suffered to incumber the streets, in *Providence* v. *Clapp*, 17 How. 161; the log by the side of the traveled path, in *Johnson* v. *Whitefield*, 18 Maine, 286, are illustrations of what are to be regarded as defects in a highway, rendering it unsafe and inconvenient. The town is liable criminally for defects in or upon the road, and for neglects in the performance of its statutory duties in reference to the highway. The defect or want of repair, is either inert matter left incumbering the street, upon or over it, or structural defects endangering the public travel. For injuries arising from any or all of these causes towns are made civilly responsible by statute.

But nuisances may obviously be committed *upon* an highway, by its unlawful use, for which those committing may be liable civilly to such as may therefrom suffer special damage, and be punished criminally by indictment, as thereby annoying the traveling public generally. The carrying an unreasonable weight, with an unusual number of horses, in *Rex* v.

*Egerly*, 3 Salk, 183; the driving a carriage through crowded streets with dangerous speed, in *U. S.* v. *Hart*, Pet. (Cir. Ct.) 390; the selling by a constable, at auction, in the public thoroughfares, in *Com.* v. *Millman*, 13 S. & R. 408; the placing at the window the effigy of a bishop labelled "spiritual broker," thereby drawing crowds to the shop, in *Rex* v. *Carlisle*, 3 C. & P. 636; the keeping coaches at a stand in the street awaiting customers, in *Rex* v. *Cross*, 3 Camp. 326; the loading and unloading wagons in the street, in *Rex* v. *Russell*, 6 Earl, 427; the congregating of carts for the reception of slops from the distilleries, in *The People* v. *Cunningham*, 1 Denio, 524; the collecting crowds in the streets by using violent and indecent language to those passing the street, thereby obstructing their free passage, in *Barker* v. *Com.* 19 Penn. 412, were severally held to be nuisances, as annoying the whole community, and incommoding and endangering the traveling public.

These, and similar acts, done upon the streets, undoubtedly interfere with the right of passage, yet the road during this time may be *as a road* safe and convenient — needing neither repair nor amendment. Yet it can hardly be contended that a town is civilly responsible for the unlawful acts of individuals passing over "a safe and convenient" road, because such acts may render its passage unsafe and inconvenient; or that it is indictable for defective public highways in consequence of the misconduct of persons upon and while in the use of the same.

If this were to be held as the meaning of the statute, then too heavy a load, or too many horses, would be regarded as defects in a public highway, to be repaired by unloading or unharnessing; want of repair would accompany the rapid horse *pari passu* as he ran along the streets, and the needed repairs would follow *passibus aequis* in the foot-prints of the' flying steed; as the visage of the labelled bishop appeared at or was withdrawn from the window, the street would be safe or unsafe, convenient or inconvenient; the presence of the auctioneer with his crowd, would create a defect, and his and their departure would leave the street repaired; the coaches

Davis *v.* Bangor.

congregating at their stand, or the carts assembling at the distillery, would make the street defective—their separation, loaded with passengers or slops, would accomplish the needful reparation; the violent and indecent language of the brawling drunkard would constitute " an obstacle natural or artificial," thereby creating a defect to be repaired by silence or removal. But such a construction would be absurd.

It has been repeatedly held that the liability of a town to pay damages or to be indicted by reason of defects or want of repair, depends upon proof of the same facts, and that in all cases when their condition is such as would render them liable for damages, they may be indicted. *Howard* v. *North Bridgwater*, 16 Pick. 189.

Now, it is apparent, that there may be many acts done *upon* the road, while in the use of it as a road, which may render the traveling unsafe, endangering the public safety, while the streets are free from all defects, need no repair, are safe and convenient, answering the most stringent requirements of the statute. The actors may be punishable criminally, or they may be liable civilly to those sustaining damages by reason of such wrongful acts done on a safe and convenient road; but the road is not, in consequence of such acts, a nuisance, by reason of any defect or want of repair, nor is the town in any way responsible for such misuse of the right of public passage.

The town or city most assuredly cannot be held liable, unless the statute gives the power of prevention and removal. If the town or city be powerless in the premises, if they cannot, by their highway surveyors, forcibly remove teams or wagons temporarily stationary, under the charge of their owners, *from off* the road, they should not be made responsible for injuries caused by their presence.

It becomes, then, important to ascertain what power of removal, if any, in reference to the obstructions arising from teams or vehicles of any description, temporarily stationary, but under the charge of their owners or drivers, is given by the statute.

By R. S., c. 25, § 71, " every surveyor is hereby authorized, within his district, to *remove* any obstacle, natural or artificial, which in any wise obstructs or is *likely* to obstruct or render dangerous the passage of any highway or townway."

The removal contemplated, is the removal of the obstacle, natural or artificial, obstructing or *likely* to obstruct the highway, from off the same. It has no reference to a removal which is effected by advancing along the traveled path of the road. Now can it be pretended, in case of a wagon or team, with horses attached, and under the care of the owner, that a power of removal is given to a surveyor? They may obstruct to the extent of the space they occupy, as does any man who passes over the street, but they are not *likely* to remain obstructing, for nobody supposes the horse and wagon, any more than the driver, is to be a fixture, or to remain permanently in the position in which they stand. But if they may be removed, how and to what place is the removal to be made? If the surveyor removes them off the traveled path, has not the owner the right of resistance? Has the surveyor dictatorial power to determine the length of time a teamster with his team may remain stationary, for purposes in themselves lawful? If he has the power of removal, can he remove the team out of the road? If he cannot, then the city is not liable. If he can, then every team temporarily standing in the highway, is a defect or want of repair, for which the town or city is indictable. If he can only remove by advancing, then the obstruction simply changes its position upon the road, and is not removed. It is obvious that the power of removal is to be exercised by removing the obstruction off the traveled path of the road, and that it does not apply to the class of cases under consideration. It will hereafter be seen that the liabilities of those temporarily obstructing the public passage, are to be determined by recurrence to the principles of the common law, and the provisions of R. S., c. 26, which regulate the law of the road.

By R. S. c. 25, § 98, "whenever any logs, lumber or other obstructions, shall be *unnecessarily left* in any highway or town

way, it shall be the duty of the surveyor, within whose limits the same may be *so left*, or in his absence, of any other surveyor within the town, forthwith to remove the same. Such surveyor shall not be liable for any loss or damage happening thereto, unless occasioned by *gross negligence or design*," &c. The section, then, authorizes the sale of the logs and other obstructions, at public vendue, for the purpose of defraying the expense of removal; and further provides that "the person by whose neglect or willful default said logs, lumber or other obstruction shall be *so left*," shall also be liable to be prosecuted at common law for such nuisance.

This section relates to obstructions caused by valuable property *left* unnecessarily upon the highway. They must possess value, else they would not be the subject of sale. They must be *left*, for the statute only applies to what is *so left*. They must be *left unnecessarily*, else the obligation "forthwith to remove" is not imposed upon the surveyor. The statute impliedly assumes that articles of value may be *necessarily* left in the street; but when so left, they must not unnecessarily remain.

From both these sections, it is apparent that the removal is to be of the obstruction, whatever its character, from *off* the traveled part of the road.

Where the obstruction is of value, the right of removal exists, not when merely left, but *only when unnecessarily left* on the highway.

Now, if a loaded team is standing in the highway, under charge of the owner or driver, or if the owner is sitting in his wagon, the team or wagon stationary in the street for temporary purposes, can the surveyor, by virtue of § 71, remove them as obstructions from off the highway? Or can he, under the provisions of § 98, forcibly dispossess the person in possession of the team or wagon, and sell the horses and wagon or other vehicle, as obstructions *left*, when they were *not left*, but were under the charge of the owner, and temporarily stationary for purposes lawful in themselves?

It is manifest that the town is not to be held liable for temporary obstructions, such as those to which we have referred, but that the rights and liabilities of parties are to be determined by the *law of the road* which regulates and prescribes the duties and obligations of all passing over the same. The distinction so apparent, between the wrongful acts of those using the road, but interfering with and obstructing the right of passage, and defects in and the want of repair of the road, is recognized by the statute making special provision for the punishment of such unlawful acts.

The law of the road is defined by R. S., c. 26. By § 4, it is enacted, that "no person shall permit his carriage or other vehicle, to travel or pass upon any such bridge or turnpike, or other road, without a *suitable driver or conductor;* nor shall *leave the same* on such bridge or road *stationary* in such a situation as to obstruct other persons traveling with any carriage or vehicle."

By § 5, a penalty not exceeding twenty dollars, nor less than one, is imposed for the offence specified in § 4, to be recovered "on complaint before any justice of the peace in the county where the offence is committed, within sixty days;" and it is further provided, that "any person injured by any of the offences or neglects aforesaid, shall also be entitled to recover his damages in an action of the case to be *commenced in one year after such injury.*"

It will be observed, that the penalty for the violation of § 4, is imposed where the team is permitted to travel or is *left* stationary, "without a suitable driver or conductor."

It would seem, therefore, to follow, that remaining stationary *with a driver*, for a temporary purpose, is not a violation of the law of the road.

If it were to be held a violation of the law of the road, the statute of limitation of one year by R. S., c. 26, § 5, would be a bar to any suit for damages after that time. If remaining stationary under the charge of a driver were to be held a defect, damages might be recovered against the

town, for which they would be entitled to remuneration as against the individual through whose misconduct, in so remaining, they occurred. *Lowell* v. *Short,* 4 Cush. 275.

But if the time of one year, as provided by R. S., c. 26, § 5, be a bar, the town might be compelled to pay without opportunity to recover over, for the town is liable for six years by R. S., c. 25 — while by c. 26, the individual causing the liability is relieved by the lapse of one year. If this section was held inapplicable, when a town has been compelled to pay for the acts of an individual, then a different rule would obtain when the suit is brought by a corporation than by an individual, which is absurd.

The results from this examination of the statutes are these :—

That all obstructions are to be removed from off the highway ; —

That when they consist of articles of value *left unnecessarily,* they may be removed at the expense of the owner ;—

That permitting a team to travel or remain stationary without a suitable driver or conductor is an offence against the statute regulating the law of the road ; —

That a team temporarily stationary in the street, under the charge of the owner or driver, is not a defect nor want of repair to be amended, nor obstruction to be removed ; —

That it is not a violation of the statute regulating the law of the road, though the person so permitting may be civilly responsible in damages to the person injured.

If, however, the individual whose acts were the cause of the plaintiff's injury, were to be regarded as having violated R. S., c. 26, § 4, still the defendants can neither be held civilly nor criminally liable because a stranger may have violated the law regulating the passage of travelers over a public highway *as and for* a defect or want of repair *in and upon* the same.

The Court was requested to instruct the jury "that the city of Bangor is not liable for obstructions in the streets and on the bridges, caused by teams loaded with trees for

the market, and under the care of the owners or drivers of the teams."

A bridge or street is for the passage of teams loaded with trees — with masts — with any article of necessity, use or ornament, or not loaded, as the case may be. The passage of an individual obstructs the street to the extent of the space he occupies. The more numerous the passers, the greater the obstruction, till the passage becomes unsafe and dangerous. Yet such obstruction is not an "obstacle natural or artificial" which the surveyor may properly remove. So teams, moving along, loaded or not, to the extent of the space they occupy, obstruct the highway; but they constitute no "obstacle natural or artificial"—no "defect or want of repair." The mast, while being hauled to the wharf or shipyard, obstructs and endangers the public travel, but while in the process of being moved to its place of destination it constitutes no defect in the highway; notwithstanding, under some circumstances, the owner might be liable in damages to those who may have been injured thereby.

The requested instruction should have been given.

The second requested instruction was, that "if the jury are satisfied from the evidence that the injury complained of was occasioned by teams *standing* on the bridge for the market and waiting for purchasers, and under the care of the drivers or owners, the city is not liable in this action."

The obstruction temporarily caused by the owners of teams under their care, waiting for purchasers, is not a defect or want of repair. If it were to be so held, then the defect would be stationary only while the teams were standing, and would be repaired by their motion on the same highway. If the ways should be thereby incommoded or endangered, their want of safety or convenience would not be amended by any action of the surveyor. Numerous wagons meet on the crowded thoroughfare of a populous city, obstructing each other and endangering the passers by. They are there for lawful purposes. They may be at rest for the purpose of enabling their owners to sell the loads thus con-

Davis v. Bangor.

veyed to market. Their presence may be an inconvenient obstruction, for which they may be indictable as for a nuisance; but the road upon which they stand is none the less safe and convenient — though its use by others may thus be rendered difficult or even dangerous. These acts may be nuisances upon the road; but they are distinct from the road — not defects nor want of repair — acts for which towns should no more be held liable, civilly or criminally, than for a brawl or riot thereon.

The second instruction should have been given.

The requested instructions, which were refused by the Court, apply to cases where the loaded teams are standing or moving under the charge of their driver, without express or implied consent on the part of the city.

The instructions given, are in no respect an answer to, or a compliance with, the requests made. They ignore the real question here presented, which was the liability of the city for teams moving or standing on its streets, under the charge of their drivers, without assent, express or implied, on the part of the city.

The Court instructed the jury, that "if the city government authorized persons with their teams and wagons to occupy a portion of such street or bridge, and make it a customary stand day after day, during the season of their business for trade with their customers, and it was by them so continuously occupied, *or* if it was occupied by them without express authority of the city government, but with their knowledge, and *without objection* on their part or interference therein, and the jury believed, from the evidence, that the city (the defendants,) assented to such use and occupation, that it would be for the jury, from the evidence in the case, to determine whether or not such occupation of the street or bridge was an obstruction which would render it unsafe for travelers, and constitute a defect therein which would render the defendants liable for injuries and damages occasioned thereby."

This instruction is in the alternative, the first branch of which relates to the law as applicable to a stand authorized

expressly by the city government.  It is not material to consider whether this be right or wrong, as there is no pretence of any express authority for that purpose.

The second branch of the alternative relates to the occupation of a stand, to which the city may have impliedly assented, and for which they are to be held liable in consequence of such implied assent.

Those occupying a stand were there either rightfully or wrongfully.

If rightfully, the action of the city government would be entirely ineffectual—neither enlarging nor diminishing the rights of those occupying.

If wrongfully, the members of the city government could not bind the city by their individual assent to the wrongful acts of others.  *Mitchell* v. *Rockland*, 41 Maine, 363; *Thayer* v. *Boston*, 19 Pick. 513.

But if the occupation was wrongful, how has the city given its assent thereto ?  Not by votes, nor by the acts of agents thereto authorized.  It has conferred no authority on any one.  It has clothed no one with power in the premises.  The inaction of the city government is not consent.  Nor is the inaction of the citizens proof of assent.  If these acts of occupation are unlawful, they are nuisances to the public, *not to the city nor to its citizens*.  If any statute has been violated, it is a public wrong.  The duty of enforcing a penalty for a violated law, is not so peculiarly incumbent upon the defendants, that they are to be regarded as assenting, because of a failure to commence public prosecutions.  If this is a public offence, the inference of assent is as strong against the public *generally* as against the citizens of Bangor *particularly ;* for neither the city government nor the citizens were under any such peculiar obligation to avenge the violated majesty of the law, that they are to be held as assenting to such violation, and as responsible therefor, because they have neither officially nor individually interfered to prosecute.

The acts and declarations of Weaver are inadmissible.  He had no authority as marshal in the premises.  His acts were

unauthorized, and do not bind the city, and his statements were inadmissible.

There are no acts proved from which the jury were justified in inferring assent on the part of the defendants.

The instructions given were erroneous, and those withheld should have been given.                *Exceptions sustained.*

RICE, CUTTING, MAY and DAVIS,* J. J., concurred.

TENNEY, C. J., HATHAWAY and GOODENOW, J. J. dissented.

DISSENTING OPINION, by

TENNEY, C. J.— The presiding Judge was requested to instruct the jury, that the city is not liable for obstructions in the streets and on the bridges, caused by teams loaded with trees for the market, and under the care of the drivers or owners of the teams. This instruction was not given, further than the same may be embraced in the general instructions. The jury were instructed, that if the city government authorized persons with their teams and wagons, to occupy a portion of such street or bridge, and make it a customary stand, day after day, during the season of their business, for trade with their customers, and it was by them so continuously occupied, or if it was occupied by them without *express* authority from the city government, but with their knowledge, and without any objection on their part, or interference therein, and the jury believe from the evidence, that the city assented to such use and occupation—that it would be for the jury from the evidence to determine, whether or not such occupation of the street or bridge, was an obstruction, which would render it unsafe for travelers, and constitute a defect therein which would render the city liable for injuries and damages occasioned thereby.

---

* The Act of April 9, 1856, providing that the Supreme Judicial Court, after the occurrence of a vacancy therein, should consist of a Chief Justice and six Associate Justices, was repealed by the Act of February 18, 1857, and the Act of March 16th, 1855, providing that the Court should consist of a Chief Justice and seven Associate Justices, was thereby revived.

Under this statute Hon. WOODBURY DAVIS was appointed and commissioned an Associate Justice of the Court in February, 1857.

The sum of this instruction, in connection with the refusal to give that first requested is, that the city is liable, for any injury caused by an obstruction in a street or upon a bridge, where the obstruction is produced by the occupation of parts thereof by teams and wagons in charge of their respective owners, day after day as a customary stand for business, the city having reasonable notice thereof. Is this the true construction of R. S., c. 25, § 89, which creates a liability for any bodily injury, &c., through any defect in any highway, townway, causeway or bridge, &c. ?

It is well settled, that a stick of timber, or other obstruction, *left* in the highway, rendering the same wanting in safety and convenience for travelers, and by reason of the same, a traveler in the use of ordinary care receives an injury, is such a defect in the way, as to make liable the party, bound to keep the same in repair and having reasonable notice thereof, to the person receiving the injury. *Springer* v. *Bowdoinham*, 7 Greenl. 442; *Johnson* v. *Whitefield*, 18 Maine, 286; *Bigelow* v. *Weston*, 3 Pick. 267.

Highways are specially designed for the use of travelers; while they are used as such, no liability is incurred by a town, county or person bound to keep them in repair, for an injury received, by the interference of one traveler with another, notwithstanding one of them may be so regardless of his duty, as to cause the injury to his fellow traveler by an obstruction of the way. But if the street is suffered to be partially filled with wagons, to remain stationary, that their owners, being present, may make sale of articles contained therein to customers, so that they constitute an impediment to the ordinary travel, it is difficult to perceive a reasonable ground of distinction, in the fact, that the owners have not left their wagons; or that the cattle or horses, which brought them to the stand, remain attached or near. The case does not differ from that where booths are erected in the street or upon a bridge in a city for the purpose of selling fruit or other articles, by the authority of the city, or with the knowledge of its officers, which erection is an essential ob-

struction to the travel. Can it be insisted, that an injury to a traveler through such erection, would not render the city as liable as it would be, if a stone or a log had caused it? The liability of the city being fixed, if the obstruction was a stick of timber, *left* in the street, apparently in the possession of no one, can it be exonerated, if the owner was sitting upon it, after it was placed in the street, attempting to make sale of the same? If the city is relieved from liability in the latter case supposed, and not in the former, it is upon a ground, which affords no security to the careful traveler.

DISSENTING OPINION of

GOODENOW, J.—The jury must have found, under the instructions given by the presiding Justice, that the street where the accident happened was not "safe and convenient," according to the requirements of the statute; and that the city government authorized persons with their teams and wagons to occupy a portion of such street or bridge and make it a customary stand day after day, during the season of their business, for trade with their customers, and that it was so continuously occupied; or that it was occupied by them without *express* authority from the city government, but with their knowledge and without any objection on their part, or interference therein, and that the defendants assented to such use and occupation. They also found, specially, "that the horse took fright from the standing tree, which might be further increased by being whipped, by the bushes on the other loads."

The "standing tree" is the one spoken of by S. F. Walker, in his testimony, as "an evergreen 18 feet high, standing erect on the wagon; there was any amount of dirt on the roots; the only tree on the team. The largest tree he ever saw in the market." He says, "these teams had not been there a great while; cannot say how long."

The presiding Justice instructed the jury, that the charter and ordinances of the city did not impose on the defendants any additional legal liabilities and obligations to make and repair highways, and he also instructed them *generally*, con-

cerning the duties of towns and cities to keep their highways, streets and bridges, safe, and convenient for travelers, &c.; and concerning their liabilities for injuries and damages occasioned by defects therein; and also upon the subject of *notice* to the defendants of such defects; and also concerning what constituted ordinary care. And it is admitted that upon all these subjects his instructions were *unexceptionable.* He did not instruct the jury "that the city of Bangor is not liable for obstructions in the streets and on the bridges, caused by teams loaded with trees for the market, and under the care of drivers or owners of the teams." And I am of opinion, that he properly declined to give the instructions in the terms requested.

In *Frost* v. *Inhabitants of Portland,* Mr. Justice WESTON says:—"It is insisted, if roads are otherwise in a state of repair, towns are not answerable for deposits or incumbrances placed upon them; but that the party injured must look to the individual by whom the nuisance was caused. A deposit in the road as effectually destroys its usefulness, as an excavation, however occasioned. The individual may not be known, or *may not be responsible.* The policy of the law fixes this duty upon towns who have officers charged with its performance. Thus every citizen has an interest, not only to prevent an incumbrance, but to hasten its removal. It is too narrow a construction, to hold that a deposit which, while suffered to remain in the road, renders it impassable, is not a defect in it. The law looks not to the cause of the defect, or to the remedies which the town may have over, or to any cumulative remedy which the person injured may have against others."

I am of opinion that the presiding Justice properly declined to give the second and third requested instructions; and that on the subject of due care on the part of the plaintiff, and notice to the defendants, he was at liberty to use his own language, and was under no necessity to adopt the language of the counsel for the plaintiff. The testimony of Holt and

Lumbert, was inadmissible, upon the question of notice to the defendants.

Upon the motion to set aside the verdict as against evidence, I do not find that it is so clearly against evidence, or the weight of evidence, as to require us to disturb it.