## John Bartlett & Wife *v.* Hooksett.

If the horse of a traveller on a highway takes fright at objects which have been suffered to remain resting upon one spot, or confined within one particular space, within the highway, and are of such a shape or character as to be manifestly likely to frighten horses of ordinary gentleness, the town is liable for injuries caused by the fright thus occasioned, unless the objects had remained in the highway so short a time that the town had not had a reasonable opportunity to remove them, or unless the person placing or continuing these objects upon the highway was, in so doing, making such use of the highway as was, under all the circumstances of the case, reasonable and proper.

A declaration alleging that the highway was obstructed, &c., by a pig-sty projecting into the same, and occupied by five swine, and that the plaintiff met with an accident by her horse's taking fright at the movements and noises of the swine, was held good on demurrer.

CASE. The declaration alleged that, "at said Hooksett, on the 28th day of October, A. D., 1866, there was, and for a long time had been and still is, a certain common and public highway leading from Concord, in said county, through the said town of Hooksett to the town of Chester, in our county of Rockingham, known as the 'old Chester road,' of which said common and public highway, so much as lies in the town of Hooksett, the said town of Hooksett, during all said time, was and is bound by law to keep in good and sufficient repair, free from defect or obstruction, and suitable for the travel passing thereon, so that all persons having occasion therefor might and may pass and repass safely thereon, by and with themselves, their horses and carriages. And the plaintiffs aver that, at said Hooksett, on said 28th day of October, a portion of said highway leading from and lying easterly of the dwelling houses of E. Johnson and C. C. Johnson was not in good and sufficient repair, and was narrow and obstructed and encumbered with a certain

pig-sty and pig-yard projecting into and located upon the limits of said highway, greatly diminishing the necessary width of said highway, and rendering the same unsafe and dangerous, and that the said town of Hooksett, well knowing the premises, on said 28th day of October, did suffer and permit the said obstructions to exist, and to be and remain located upon and projecting into the limits of said highway, and did knowingly suffer and permit the said pig-sty and pig-yard to be occupied with and by certain swine. And the plaintiffs aver that on the said 28th day of October, the said Margaret Bartlett was lawfully travelling over and upon said highway, riding in a certain wagon, drawn by a horse, and driven in a prudent and proper manner by one Andrew J. Langley, the whole weight of the load upon said wagon being less than three tons, to wit, of the weight of four hundred pounds and no more. And the plaintiffs say that as the said Langley was riding and driving the said horse and wagon, the said Margaret being in said wagon, the said horse and wagon came along in said highway to a point nearly opposite the said pig-sty and pig-yard; and that there were in said pig-sty and pig-yard, by the sufferance, permission and negligence of the said town of Hooksett, and occupying the same, divers, to wit, five swine; and the said swine then and there started and ran in and about said pig-sty and pig-yard, and by starting and running about, as aforesaid, and by certain loud noises which the said swine then and there uttered, so frightened the said horse, driven by the said Langley, as aforesaid, as to cause him to jump and sheer suddenly and violently, thereby tipping up the said wagon so that the said Margaret was thrown violently out and upon the ground, and was greatly bruised, lamed and injured in her head, arms, back, shoulders, legs and sides, and her right arm broken, and her said right arm dislocated, at or near the shoulder joint; by means of all which the said Margaret has been made sick and disabled, and has suffered and still suffers great pain and distress, and is unable to perform any labor, and is likely to continue lame and disabled during her natural life; all which is by reason of the negligence of the defendants, and the obstruction and defect in said highway, as aforesaid, and without the fault of the plaintiffs, or either of them, or of the said Langley."

To this declaration the defendants demurred generally.

*Foster & Sanborn*, for plaintiffs.

*Minot & Mugridge*, for defendants.

SMITH, J. "An illegal use of the highway by men, animals, vehicles, engines, or any other object, while movable and actually being moved by human will and direction, and neither fixed to, nor resting on, nor remaining in one position," nor confined within any particular space, within the limits of the highway, might not render the town liable for damages occasioned by horses taking fright at the appearances presented by, or the sounds and scents emitted from, such objects; see *Ray* v. *Manchester*, 46 N. H. 59 ; *Davis* v. *Bangor*, 42 Maine 522 ; *Bar-*

*ber* v. *Roxbury*, 11 Allen, 318. It would be quite difficult for towns, whatever powers they possessed, or however diligent they might be, to guard against annoyances of so shifting or temporary a nature.

But if objects are suffered to remain (except for the merest temporary purposes) resting upon one spot, or confined within any particular space, within the highway, and are of such a shape or character as to be manifestly likely to frighten horses of ordinary gentleness, injuries caused by the fright thus occasioned may properly be said to happen "by reason of the obstructions" or "insufficiency" of the highway, unless the person placing or continuing those objects upon the highway, was, in so doing, making such use of the highway as was, under all the circumstances of the case, reasonable and proper. The recent decisions in *Kingsbury* v. *Dedham*, 13 Allen 186, and *Cook* v. *Charlestown*, 13 Allen 190, note, which are in conflict with the *dictum* of the same court in *Howard* v. *North Bridgwater*, 16 Pick. 189, p. 190, and with the views expressed in *Dimock* v. *Suffield*, 30 Conn. 129, seem to us incorrect; and the law was stated otherwise, apparently without objection, in *Winship* v. *Enfield*, 42 N. H. 197, and *Chamberlain* v. *Enfield*, 43 N. H. 356. Objects calculated to frighten horses would often be far more dangerous, and much less easily guarded against by the traveller, than many obstructions with which he comes in actual contact or collision; and when they have been suffered to remain in the highway so long that the town may fairly be said to have had notice of their existence there, and a reasonable opportunity to remove them, (see 43 N. H. 265,) there can be no hardship to the town in holding it liable for damages caused by horses taking fright at them. The defendants' position, that an object cannot be regarded as an obstruction solely because of its tendency to cause fright, cannot be sustained.

"The obstruction, contemplated by the statute, is in general one from or by reason of mere matter." *Bartlett, J.*, in *Ray* v. *Manchester*, 46 N. H. 59, p. 60. In the case at bar it seems to be alleged that the immediate causes of fright were the motions and noises of animals. It has been said that "nothing is an obstruction which the town were not bound to have removed at the time of the injury under the circumstances of the particular case;" and that "the incumbrances which surveyors of highways are empowered to remove by the 59th chapter of the Revised Statutes are those by inert matter;" and it may be argued that the town, not having had the power to remove the animals, should not be held answerable for the consequences of their presence; see *Ray* v. *Manchester*, 46 N. H. 59. In a case of fright occasioned by animals running at large in the highway this argument might deserve consideration, although in that case the town have power to enact a by-law which would give the citizens authority to remove the animals to the pound. Rev. Stats. ch. 31, sec. 7; ch. 137, sec. 1. But in the present case the swine were confined in a structure or enclosure which had been built within the limits of the highway, and which was used for the business of keeping and herding together such animals in one spot within the highway. It may well be inferred that the erection and continuance of this structure was the inducement which caused the owner of the swine

to keep them in that place, and that, if the sty had not been suffered to remain there, the swine would have been kept in some other enclosure not within the highway ; and even if they were allowed to run at large in the highway they might have been scattered, and the risk of fright to horses from their movements and noises have been less than when they were herded together.    The continuance of the sty materially enhanced, and its removal would have correspondingly diminished, the danger to travellers from the movements and noises of the animals.    The surveyor could have removed the "inert matter" composing the sty, even if he had no power to remove the swine, (a point upon which we give no opinion.)

Whether the existence of the pig-sty with its inmates was an "obstruction" within the meaning of the statute, is a question of fact for a jury under instructions in accordance with the foregoing views, and with the other legal principles applicable to such cases ; see *Johnson* v. *Haverhill*, 35 N. H. 74 ; *Palmer* v. *Portsmouth*, 43 N. H. 265.

As we think that under this declaration it would be competent for the plaintiffs to offer evidence upon which a jury might find that the accident happened "by reason of the obstructions" or "insufficiency" of the highway, the demurrer must be overruled.

*Demurrer overruled.*