Believing the evidence sufficient, and finding no error in the record, the judgment is affirmed.

PER CURIAM. The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the court.

On Motion for Rehearing.

MORROW, P. J. Without reviewing the facts, the opinion is expressed that on the original hearing the proper judgment was rendered

The motion for rehearing is overruled.

**REEGAN v. CITY OF GALVESTON.**
(No. 9331.)

Court of Civil Appeals of Texas. Galveston. Nov. 29, 1929.

Rehearing Denied Dec. 19, 1929.

ages for the death of her deceased husband, the father of the minor plaintiffs, which is alleged to have been caused by the negligence of the defendant. For cause of action, the petition alleges:

"That on or about the 27th day of June, 1927, about 5:30 o'clock in the morning, plaintiff's deceased husband was in the employ of the defendant, the City of Galveston, as a motorcycle officer, and as such employee it was part of his duty to chase speeding automobiles, and all other motor vehicles violating the law, and it was the duty of the defendant City to furnish him with a good and reasonably safe motorcycle for that purpose; that defendant wholly neglecting and disregarding its duty in that behalf, did furnish deceased with a motorcycle which was defective and sorely in need of repair, which said defects were known to defendant, or might, by the exercise of ordinary care, have been known to said defendant; that while deceased was using said defective motorcycle so negligently furnished him by defendant, and while acting under the orders of the agents of the defendant City, and in the scope of his employment, his motorcycle came into contact with an obstruction located in the center of the intersection of 21st Street and Avenue H, negligently placed there by this defendant, said 21st Street and Avenue H being duly dedicated highways in the said City and County of Galveston, with the result that plaintiff's deceased husband was precipitated over the handlebars of said motorcycle causing him to sustain a fractured skull, from which injury he died on the 29th day of June, 1927.

"Plaintiffs further say that said accident was occasioned wholly and solely by reason of the negligence of the defendant in the following respects, to-wit:

"1. That defendant was negligent in furnishing deceased with a motorcycle which was defective and sorely in need of repair, and which was in such poor condition as to cause deceased to be thrown immediately upon said motorcycle coming into contact with said obstruction.

"2. That defendant was negligent in allowing the steering apparatus of said motorcycle to become so defective as not to allow deceased a chance even to have avoided said obstruction.

"3. That defendant knowing said motorcycle to be defective compelled deceased to use same.

"4. That the defendant negligently and unlawfully caused said obstruction to be placed in the center of the street.

"5. That defendant knowing that said obstruction was a menace, still continued to allow it to remain there.

Harold M. Oster, of Galveston, for appellant.

Bryan F. Williams, of Galveston, for appellee.

PLEASANTS, C. J. This suit was brought by plaintiff in error, Margaret Reegan, for herself and her minor children against the defendant, city of Galveston, to recover dam-

"6. That defendant took no precautionary measures to warn deceased of the obstruction."

The defendant answered by general demurrer and general denial, and specially pleaded contributory negligence on the part of the deceased.

At the close of the evidence adduced by plaintiffs on the trial below, the court granted a motion for an instructed verdict presented by the defendant, appellee herein, and upon the return of such verdict rendered judgment in accordance therewith. From the judgment so rendered, the plaintiffs, who are hereinafter styled appellants, prosecuted this writ of error.

It is not contended in appellant's brief that the evidence before the jury raised any issue of negligence on the part of appellee in failing to furnish the deceased with a reasonably safe motorcycle for the performance of the duties of his employment, but it is earnestly insisted that the undisputed evidence raises the issue of the negligence of the appellee in permitting the dangerous obstruction to be placed and to remain in the street of the city which caused the accident that resulted in the death of the deceased. The evidence in full, as set out in appellants' brief is as follows:

H. V. Trahan testified as follows: "On the morning of the 27th of June, at about 5:30 o'clock A. M., I was in front of the street car barn. I was standing in front of the street car barn at the time, and I think there were two or three other parties standing out there, we were all together. I don't remember who was with me at the time, but at the time I was standing there, an automobile, a big sedan passed the street car barn going at a high rate of speed, I judge approximately sixty miles per hour; just as this big sedan passed, I made the remark, 'Oh, Mama, I wonder where the motorcycle cop is at this time,' and just at that time the motorcycle cop came from Broadway, I expect he was half way between Broadway and Avenue I when I made that remark. He was chasing the automobile, and he was going approximately at the same rate of speed of the automobile. I don't expect there was one hundred yards between them. After I saw the automobile and motorcycle pass me, I seen the automobile hit a stump in the street. When I say stump, I mean a marker that was there and I seen the motorcycle officer hit it too. The motorcycle officer hit the bump in the street. When the motorcycle hit the bump in the street, the motorcycle turned over and looked like the motorcycle officer was with it, as near as I could see from the barn. The marker that I spoke of is located on 21st Street between I and H. 21st Street runs north and south. Avenue H runs east and west, as also does Avenue I. Now this mark-er or bump that I spoke of, which I say I saw the motorcycle and automobile both strike, was located on Avenue H, the south side of Avenue H between the east side of 21st Street and the west side of 21st Street and between two street car tracks. It was approximately in the exact center of the street. I have no idea how high the top part was above the pavement; I never paid much attention to it. Probably it was six inches above the pavement, yes sir, I would judge it was. I never paid much attention to it, though. I saw the motorcycle officer strike the marker."

M. Seymour testified as follows: "About 5:30 o'clock in the morning of the 27th day of June 1927, I was out in front of the car barn at the intersection of 21st Street and Avenue I. The car barn is located at the intersection of 21st Street and Avenue I to H; that is between I and H. On this morning I was sitting out in front of the barn on a stool and I looked up towards Broadway and I saw a big automobile come tearing down the street, and a motorcycle officer right behind it. I watched the car until it got past the barn, and then it hit a street marker in the middle of the street. This motorcycle cop was about twenty-five or thirty feet behind it, and I imagine he was following him, and the two left tires on the left wheels of the Buick, it was a Buick, hit the street marker and blew out the two tires. The motorcycle officer came on behind and hit the street marker. When the motorcycle hit the street marker, it went up in the air. I saw the motorcycle hit the street marker. The marker that I spoke of was round, and I imagine it was twelve inches up from the ground. I saw this motorcycle hit this marker. I did not pay enough attention to this marker to give its dimensions. I imagine the marker was two feet across the bottom of it. Of course, I have never measured this marker and I cannot tell you the exact measurements of it, but it is my judgment it was twelve inches high."

J. J. Vinson testified as follows: "I had occasion to be at the street car barn on or about the 27th day of June, 1927, about 5:30 in the morning. The motorcycle hit this bump and it threw him up in the air. The marker is located in the center of the street, or was at that time. The marker was about that high (indicating) about twelve inches high. I saw the motorcycle strike the bump."

The Honorable Bryan Williams, counsel for defendant, hereupon placed the following stipulation before the court: "It is stipulated and agreed between counsel in this case that James G. Reegan, the deceased, husband of Mrs. Marguerite Reegan, and father of the minor children, died as a result of the injuries received in the accident on June 27, 1927."

If the city of Galveston can be held liable for injury caused by the condition of its

streets not brought about by the affirmative act of the city, it goes without saying that this evidence raises the issue of actionable negligence of the city. There is no evidence as to when or by whom the obstruction which caused the accident in which the deceased lost his life was placed in the street, and no testimony from which it can be reasonably inferred that it was so placed by the authority or with the knowledge of the city.

The charter of the city of Galveston, enacted by the Legislature in 1903 (Sp. Laws 28th Leg. c. 37), and which by its terms is a public law of which the courts must take judicial notice, and was in full force and effect at the time the accident here involved occurred, contains the following provisions: "Section 47. That the said City of Galveston shall not be liable in damages for any injury or injuries to persons or to property caused by filling, raising, grading or elevating any property within the City of Galveston, or in prosecution of any public improvement in said City, or on account of any defect in any street, sidewalk or other public place."

In the case of Williams v. City of Galveston, 41 Tex. Civ. App. 63, 90 S. W. 505, which was a suit for damages for personal injury caused by the alleged negligence of the city in the construction and maintenance of a bridge or cover over a gutter or drain in a street of the city, this court held that the provisions of the legislative charter of the city above quoted exempted it from liability for the injury complained of, and that the trial court properly sustained a general demurrer to the plaintiff's petition. The Supreme Court refused a writ of error in the case, and, since the only question there presented was the validity of the statute exempting the city from liability for the negligence charged against it, the refusal of the writ necessarily involved an affirmance by the Supreme Court of the judgment of this court upholding the validity of the charter provisions in that case. We are not aware of any contrary ruling on this question by the Supreme Court.

The only exemption from liability involved in the Williams Case was from "any defect in any street, sidewalk or other place," and that is true as to the instant case. An obstruction is as much a defect in a street as a hole, and the word "defect" as used in this charter provision must be held to include the obstruction caused by the street marker described by plaintiff's witnesses. Barber v. City of Roxbury, 11 Allen (Mass.), 318; Griffin v. Boston, 182 Mass. 409, 65 N. E. 811; Davis v. Bangor, 42 Me. 522; Wallace v. City of New Haven, 82 Conn. 527, 74 A. 886; McQuillin, Mun. Corp. vol. 7, p. 124.

We do not think the cases cited by appellant, Amarillo v. Tutor (Tex. Com. App.) 267 S. W. 697, and Amarillo v. Green (Tex.

Com. App.) 267 S. W. 702, are in conflict with the Williams Case, nor with the judgment of the trial court sustaining the provision of the charter exempting the appellee from liability in this case. In each of the cases cited by appellant the suit was for damages for personal injury caused by the negligence of the city of Amarillo in the operation by the city of a street railway, and the exemption of the city from liability for injury so caused was claimed under a provision of an ordinance of the city exempting it from any and all liability for any "character of injury to persons or property, however the same is caused or produced." In the cited cases it is held and the soundness of the holding is, we think, apparent, that the broad exemption contained in the ordinance above quoted was invalid. The power of the Legislature to authorize a municipal government to exempt itself from liability for injury caused by its negligence can only be exercised as to matters of local self-government and police regulation, and cannot be extended so as to include the operation for hire of a street railway.

It may be conceded that some of the exemptions contained in the charter provision above quoted are invalid under the holding in the Tutor Case, because in violation of the constitutional provision prohibiting the taking or damaging of private property for public use, but this provision of the Constitution cannot be invoked against the validity of the exemption for personal injury caused by a defective street. This was the holding in the Williams Case. The charter above quoted states the exemption from liability therein enumerated in the disjunctive, and some of these exemptions can be held invalid without impairing the validity of them all. The fact that the Williams Case was not discussed or mentioned by the Commission of Appeals in the opinion in the Tutor Case indicates that it was not thought to be in conflict with the conclusions reached in the later case. Since the Amarillo Cases were decided, the Court of Civil Appeals for the Fourth District, in the case of San Antonio v. Haynes, 5 S.W.(2d) 205, 206, has followed the Williams Case and upheld the validity of a charter provision of the city of San Antonio exempting the city from liability on account "of any defect in, obstruction on, or anything else in connection with any sidewalk in the city." The sidewalk is a part of the street, and there can be no distinction in the exemption of liability for defects or obstructions in that portion of the street used as a sidewalk and the portion used for other kinds of traffic. If an exemption as to one is valid, it must be equally so as to the other.

If, however, our conclusion that the exemption from liability in this case granted the appellee by its charter provision above quoted is valid should be held unsound, the judgment

should be affirmed because there is no evidence, sufficient to raise an issue, tending to show that the appellee placed the obstruction in the street, or knowingly permitted it to remain there.

It is well settled law in this state that a city cannot be held liable for damages caused by the unsafe or defective condition of its streets unless such condition was caused by the city or under its authority, or there was a negligent failure of the city to cure the defect after actual or constructive notice of its existence. City of Galveston v. Barbour, 62 Tex. 173, 50 Am. Rep. 519; City of Dallas v. Jones, 93 Tex. 38, 49 S. W. 577, 53 S. W. 377; City of Austin v. Ritz, 72 Tex. 391, 9 S. W. 884; City of Galveston v. Smith, 80 Tex. 69, 15 S. W. 589; McQuillin, Mun. Corp. vol. 7, p. 24, § 2908, page 51, § 2917.

It follows from the conclusions above expressed that the judgment should be affirmed, and it has been so ordered.

Affirmed.