HELÈNE BUNTEN, PLAINTIFF, v. WILLIAM R. BUNTEN
AND ANNA BUNTEN, DEFENDANTS.

Decided June 10, 1937.

For the plaintiff, *Julius Kass.*

For the defendant, *Huyler E. Romond.*

BARBOUR, S. C. C. This action is brought to determine the constitutionality of an act of the legislature entitled, "An act declaring and carrying into effect the public policy of the State of New Jersey with respect to causes of action for alienation of affection, criminal conversation, seduction, and breach of contract to marry, actions thereon, contracts with respect thereto and acts and proceedings in connection therewith." *Pamph. L.* 1935, *ch.* 279; *N. J. Stat. Annual* 1935, § 163-411.

The plaintiff by the first count of her complaint alleges that the defendant Anna Bunten alienated the affections of Henry Bunten, husband of the plaintiff; by the second count that the defendant William R. Bunten alienated the affections of plaintiff's said husband; and by the third count both defendants alienated the affections of plaintiff's said husband and she has a "complaint for alienation of affection" against the defendants, "but is prevented from determining her rights

and status in the premises by virtue of the aforementioned statute," and contends that such statute is unconstitutional in so far as it "deprives her of her property and rights without due process of law, and deprives her of the right to retain an attorney to prosecute an action for alienation of affections" as by reference to the complaint will more fully appear.

The complaint prays that the "court may make an order directing all the parties named herein as defendants, and the attorney-general of the state, to answer "the complaint and to appear before the court and present their answer and arguments on such day as the court shall determine, and upon such notice as this court shall order."

The complaint was served, together with a summons, upon the defendants, William R. Bunten and Anna Bunten but no notice appears to have been given to the attorney-general.

Having first come before the court on a motion by counsel for the defendants, William R. Bunten and Anna Bunten, to strike the complaint, counsel subsequently entered into a stipulation in writing that the issues raised by the pleadings be determined "as if answer and reply had been filed as of the time of argument of motion on the 4th day of December, 1936."

I am, therefore, refraining from determining whether or not the action may lie under the Declaratory Judgment act but will pass directly to the question of the constitutionality of chapter 279, *Pamph. L.* 1935, *supra,* in so far as it pertains to the plaintiff and her alleged cause of action.

Assuming, but not determining, that at common law the plaintiff would have had a cause of action for the alleged alienation of the affections of her husband, I hold it to be within the province of the legislature to abolish such an action.

In determining the intent of the legislature we are aided by the preamble to the act, which reads as follows:

"Whereas, the remedies herein provided for by law for the enforcement of actions based upon alleged alienation of affections, criminal conversation, seduction and breach of contract to marry have been subjected to grave abuses, causing extreme

annoyance, embarrassment, humiliation and pecuniary damage to many persons wholly innocent and free of any wrongdoing, who were merely the victims of circumstances, and such remedies having been exercised by unscrupulous persons for their unjust enrichment and such remedies having furnished vehicles for the commission or attempted commission of crimes and in many cases having resulted in the perpetration of frauds, it is hereby declared as the public policy of the State of New Jersey that the best interest of the people of the state will be served by the abolition of such remedies. Consequently, in the public interest, the necessity for the enactment of this article is hereby declared as a matter of legislative determination: therefore, Be it enacted * * *."

The purpose was clearly to prevent wrongs arising from an abuse of remedies therein referred to and including "actions based upon alleged alienation of affection." By the very nature of such an action the wrong cannot be prevented if the action may be instituted in the first instance, even though it be successfully defended. Even the threat of such an action does irreparable damage.

The press considers the institution of such an action as news which, in its endeavor to fulfill it's duty to the reading public, must not be suppressed but must be published without regard to consequences in so far as the person charged is concerned. Unfortunately some publishers consider that their duty is not properly performed unless such "news" appears in bold face type, under a "scare" headline, accompanied with photographs. The press, however, is not alone at fault because "Dame Rumor" carried by the swift wings of "scandal-mongers" does an even more efficient job, and the "juicy morsel" is rolled around on the tongues of all who know or know of the individual accused.

His character, of course, is not affected, but his reputation is riddled and he becomes a person towards whom the finger of scorn is pointed by men, women and children alike. The higher his previous standing in the community, state, or nation the greater the joy in relating the scandal and, of course, the greater the harm.

When the action is later abandoned because the person accused is not willing to submit to blackmail or when upon trial the action is successfully defended the "news value" has diminished, to say the least, and not one-half of those who heard and remembered the news of the bringing of the action ever hear of the outcome, and the smirch on the reputation remains.

To avoid this the mere threat of bringing action was in recent years used improperly more and more frequently, developing into a "racket."

It is impossible to save the remedy for the honest, well meaning, truly injured spouse without leaving the door wide open for the "racketeer." Therefore, the spouse having a *bona fide* complaint must, as a member of society, conform to a law designed for the protection of society.

"If man were to live in a state of nature, unconnected with other individuals, there would be no occasion for any other laws than the law of nature, and the law of God * * *. But man was formed for society * * *." *Blackstone* 44. "The only true and natural foundation of society are the wants and the fears of individuals." *Id.* 48. "Every man, when he enters society, gives up a part of his natural liberty, as the price of so valuable a purchase; and, in consideration of receiving the advantages of mutual commerce, obliges himself to conform to those laws, which the community has thought proper to establish." *Id.* 126.

With the growth of society the need for new laws increases. With the growth of society evil minds turn rights into vehicles of wrong and where the wrong has grown to such proportions as to outweigh the good, and it is impossible to prevent it otherwise, then it becomes necessary to call upon the good member of society to forego some of those rights previously enjoyed, so that other good members of society, greater in number, may be relieved of the fear and harm resulting from the wrong. So with actions for alienation of affections. More homes are broken up, more marriages smashed upon the rocks of suspicion as the result of unjustified demands and threats of alienation actions than are those

violated by an actual invader. To avoid this many people were submitting to blackmail each year.

New Jersey in 1935 was one of the states which endeavored by legislation to correct this evil. To permit even the threat of suit, much less the institution of suit, would not correct it, because rarely ever does a blackmailer actually take the witness stand against the accused.

Mr. Justice Heher, speaking for the Court of Errors and Appeals, in *Levine* v. *State,* 110 *N. J. L.* 470; 166 *Atl. Rep.* 300, while referring to the Disorderly Person act, said: "The manifest purpose of this legislation is to check evil in its beginning and thus to insure the public safety. The statute is not arbitrary or unreasonable. It provides for the apprehension and punishment of a class that menace the security of persons and property."

This language was quoted by the Supreme Court (*per curiam*) in *State* v. *Bell,* 15 *N. J. Mis. R.* 109 (at *p.* 111); 188 *Atl. Rep.* 737, with reference to the "Gangster act."

"This language likewise aptly fits the statute now under consideration, the 'Heart Balm act.'

"The legislature, in dealing with the subject of marriage, has plenary power, as marriage differs from ordinary common law contracts, and is subject to control and regulation by the state * * *. An action to recover damages for breach of promise to marry is based upon an agreement preliminary to marriage and an action to recover damages for alienation of affections and criminal conversation is founded upon the marriage relation itself. Each has to do with the marriage status and each is subject to regulation and control by the state." *Hanfgarn* v. *Mark* (*Court of Appeals, N. Y., April 27,* 1937).

In that case the Court of Appeals of New York upheld the constitutionality of the New York "Heart-Balm" act of 1935, reversing the Appellate Division, and I quote further from it, feeling that the reasoning aptly fits the New Jersey statute under consideration:

"It has been expressly decided by the United States Supreme Court that marriage is not a contract within the meaning of

the federal constitution which prohibits the state from impairing the obligation of contract. *U. S. Const., art I,* § 6; *Mayard* v. *Hill,* 125 *U. S.* 190.

"Marriage has been frequently referred to as a contract in judicial opinion, by text-writers and in statutes. Nevertheless, it is not a common law contract as generally understood. It has some of the attributes of such a contract, but contains many elements foreign to a common law contract. It may be lawfully entered into by parties under twenty-one years of age. It cannot be dissolved by consent of the parties. After marriage, the state imposes duties and obligations upon the parties entirely outside of the marriage agreement. The relation entered into by the parties is regulated by the state.

" 'It partakes more of the character of an institution regulated and controlled by public authority, upon principles of public policy, for the benefit of the community!' *Wade* v. *Kalbfleisch,* 58 *N. Y.* 282, 284.

"Not being a common law contract, the relation may be regulated, controlled and modified and rights growing out of the relationship may be modified or abolished by the legislature without violating the provisions of the federal or state constitution which forbid the taking of life, liberty, or property without due process of law. *N. Y. Const., art. I, VI; U. S. Const., Fifth Amendment."*

In my opinion the enactment of this statute was clearly within the power of the legislature. It was required by the growth of society to check evil in its beginning. Assuming, but not determining, that a cause of action existed at common law there is no reason why we should suffer an evil to continue to grow which presumably came into existence since our state was established and our constitution adopted.

Mr. Justice Heher, speaking for the Court of Errors and Appeals of this state, in *Pine* v. *Okzewski,* 112 *N. J. L.* 429 (at *p.* 438) ; 17 *Atl. Rep.* 825, said :

"Changing conditions necessarily impose a greater demand upon the reserve element of sovereignty called the police power, for such reasonable supervision and regulation as may be essential for the common welfare. Acceptance of restric-

tions upon the so-called natural rights of every individual, necessary to insure observance by the individual citizen of the duty to use his property and exercise his rights and privileges with due regard to the personal and property rights and privileges of others, is the first and most imperative obligation entering into what we call the social compact. Without it there can be no such thing as organized society or civilized government. *Des Moines* v. *Manhattan Oil Co.,* 193 *Iowa* 1096; 184 *N. W. Rep.* 823; 23 *A. L. R.* 1322."

Never were the words, "this is a good bill and ought to pass" more properly spoken by a member of the legislature than in the case of this measure. It was a good bill, is a splendid law and I hold it to be constitutional.

I, therefore, declare that the plaintiff has not a right of action for the alienation of the affections of her said husband and that it would be unlawful for her or any other person in her behalf, as a party, attorney, agent or otherwise, to "file or serve, cause to be filed or served or threaten to file or serve, or threaten to cause to be filed or served, any process or pleading, in any court of the state, setting forth or seeking to recover a sum of money upon" her alleged cause of action, such cause of action having been abolished by the act under consideration.

Judgment may be entered accordingly.