PENNINGTON *v.* STEWART ET AL.

[No. 26,866.  Filed October 25, 1937.]

554

*Ralph Bamberger, Isidor Feibleman* and *Julius Bamberger,* for appellant.

*George Stewart,* for appellees.

HUGHES, J.—The appellant filed his complaint in the lower court against the appellees to recover damages for the alienation of the affections of his wife, Ethelene Pennington, the daughter of the appellees. The appellant asserts in his complaint that the appellees by their conduct maliciously and wrongfully deprived the appellant of the society and consortium of his wife and destroyed the love and affection of his wife for him.

The appellees filed a demurrer to the complaint on the grounds that it did not state facts sufficient to constitute a cause of action. The demurrer was sustained and the appellant refused to amend or plead over and elected to stand upon the ruling. It was the theory of the demurrer that Chapter 208 of the Acts of 1935 of the General Assembly of the State of Indiana took away all rights of action for alienation of affections except such as are saved in the Act.

The only assignment of error is that the court erred in sustaining appellee's demurrer to the complaint. The title of the Act, in part, is as follows:

"An Act to promote public morals, by abolishing civil causes of action for breach of promise to marry, alienation of affections . . ."

Section 1 thereof provides:

". . . That all civil causes of action for breach of promise to marry, for alienation of affections, for criminal conversation and for the seduction of any female person of the age of twenty-one or more are hereby abolished, provided that this section shall not affect any such cause of action heretofore accrued."

It is the theory of the appellant that his complaint states a good cause of action for the reason that the act in question insofar as it abolishes a husband's ██ cause of action for the alienation of his wife's affections, violates the provision of Article 1, Section 12 of the Indiana Constitution and Section 1 of the 14th Amendment to the United States Constitution.

That part of Article 1, Section 12 upon which the appellant relies is as follows:

". . . and every man, for injury done to him in his person, property, or reputation, shall have remedy by due course of law. . . ."

It is the contention of appellant that:

(1) At the time of the adoption of our State Constitution and prior thereto, a husband had a common law right of action for the alienation of his wife's affection;

(2) At the time of the adoption of our State Constitution and prior thereto, the alienation of a wife's affections was considered an injury to the person and property of the husband within the meaning of Article 1, Section 12 of the Constitution; and,

(3) That the purpose, meaning, and intent of said Section 12 is to save from legislative abolishment those

causes of action for injuries to person, property or reputation which were recognized by the common law in this jurisdiction at the time of the adoption of the State Constitution.

In other words, it is the contention of appellant that he has a property right to the affections of his wife which can not be taken away from him without due course of law. We can not assent to such contention and do not believe that the makers of our Constitution intended that the word "property" in said section should be construed to have such meaning. The word "property" ordinarily means something which one has the right to possess, enjoy, and dispose of—the right and interest which a man has in lands and chattels. We think it was in this sense that the word "property" was used in the Constitution. The right of action for alienation of affections necessarily grew out of the marital relations and without such a status there could be no such right of action. The right of action grew out of the marriage contract, yet it has been held by the United States Supreme Court that marriage is not a contract within the meaning of the Federal Constitution which prohibits the states from impairing the obligations of contracts. *Maynard* v. *Hill* (1888), 125 U. S. 190, 8 S. Ct. 723, 31 L. Ed. 654, 657. And as said in that case:

> "Marriage, as creating the most important relation in life, as having more to do with the morals and civilization of a people than any other institution, has always been subject to the control of the legislature. That body prescribes the age at which parties may contract to marry, the procedure or form essential to constitute marriage, the duties and obligations it creates, its effects upon the property rights of both, present and prospective, and the acts which may constitute grounds for its dissolution."

If marriage, itself, is subject to the control of the legislature, the incident, the right of action for alienation of

affections which grows out of that relation would necessarily seem to be under control of that body. Marriage and divorce are controlled by the acts of the legislature. In Article 4, Section 22 we find that the Constitution prohibits the legislature from passing a local or special law with reference to granting divorces. This is the only restriction we find relative to the marriage relation. In every other respect the subject of marital rights is left to the discretion of the legislature. There is nothing in Article 1, Section 12 to indicate that the legislature has not full power and authority to pass such laws relative to the marriage status as public policy dictates.

In the case of *Noel* v. *Ewing* (1857), 9 Ind. 37, which has been quoted with approval in many jurisdictions, it is said (p. 50) :

"In this light marriage is more than a contract. . . . It is a great public institution, giving character to our whole civil polity. Hence, as between husband and wife, there is no constitutional provision protecting the marriage itself, or the property incident to it, from legislative control, by general law, upon such terms as public policy may dictate. The sovereign power may, by general enactment, regulate and mold their relative rights and duties at pleasure."

Conceding that an action for alienation of affections is a property right, it is at the most only an incident of the marital relation and since such relation is subject to the control of the legislature the right of action for alienation of affections would also be subject to such control.

At the common law the husband was liable for the torts of his wife. This liability grew out of the marriage status and was merely an incident of the marriage relation. This rule of the common law was abrogated in this state by the legislature of 1881 and also by an

Act of 1923. Section 38-105 Burns 1933, §5647 Baldwin's 1934. *McCabe* v. *Berge et al.* (1883), 89 Ind. 225. It does not appear that the right and power of the legislature to enact such legislation has been questioned during all the intervening years.

In 1935 the legislature of the State of New York passed an act almost identical in all provisions with the act we are now considering. On April 27, 1937, the Court of Appeals of New York had occasion to pass upon the constitutionality of the act, and especially insofar as it abolished the right of action to recover damages in an action for alienation of affections. It based its decision upon the ground that the legislature in dealing with the subject of marriage, had plenary power, as marriage differs from ordinary common-law contracts and is subject to control and regulation by the state. *Hanfgarn* v. *Mark* (1937), 274 N. Y. 22, 8 N. E. (2d) 47. In that case it was said (pp. 25-26) :

"Marriage has been frequently referred to as a contract in judicial opinions, by text writers and in statutes. Nevertheless, it is not a common law contract as generally understood. It has some of the attributes of such a contract, but contains many elements foreign to a common law contract. It can not be dissolved by the consent of the parties. After marriage, the State imposes duties and obligations upon the parties entirely outside of the marriage agreement. The relation entered into by the parties is regulated by the State. . . . Not being a common law contract, the relation may be regulated, controlled, and modified and rights growing out of the relationship may be modified or abolished by the Legislature without violating the provisions of the Federal or State Constitution which forbid the taking of life, liberty or property without due process of law. . . . In view of the broad and almost unlimited extension of the rights of married women brought about by statutory enactments and social advancement, we think that no court in this State would decide that the rights which a husband has by virtue of the marriage relation constitute prop-

erty rights. A wife is no longer the property of her husband in the eyes of the law and by the general acceptance of society."

We are fully in accord with this statement.

In our judgment the act in question insofar as it abolishes an action for alienation of affections is not in violation of Article 1, Section 12 of the Indiana Constitution and that said section does not prohibit the legislature from legislating upon a subject growing out of the marital relation. Such legislation is not prohibited by any provision of the Constitution.

Section 8 of the act in question provides that:

"Any person who shall violate any of the provisions of sections 3, 4, and 7 of this act shall be guilty of a felony which shall be punishable by a fine of not less than one hundred dollars nor more than one thousand dollars, to which may be added imprisonment for any determinate period of not less than one year nor more than five years, in the discretion of the court."

Section 3 of the act provides that:

"It shall hereafter be unlawful for any person, either litigant or attorney, to file or cause to be filed, threaten to file, or threaten to cause to be filed in any court of the state any pleading or paper setting forth or seeking to recover upon any cause of action abolished by or barred by the act, whether such action arose within or without this state."

Sections 4 and 7 of the act are not involved in the present action and we will therefore limit our opinion to the legality of section 3. If section 8 is valid then the appellant and his attorneys are guilty of a felony and each subject to be fined in any sum from one hundred to one thousand dollars and a possible prison sentence of one to five years. They can not deny that they filed a complaint in a court of this state to recover in an action for alienation of affections and because of this fact, according to section 8 of the

act, they are subject to the penalties contained therein. The appellant and his attorneys are in this court testing the constitutionality of the act. They are asking for their day in court, and can it possibly be said that they are not entitled to this right without being branded as felons, subject to an excessive fine, and deprived of their liberty? We do not think so. "Every individual who feels himself aggrieved either by the action of some ·other individual or of the state or nation is secured the right to bring his grievance before some court. It may be a court of law or equity, a court established by a statute or by a Constitution, a state court or a federal court, but somewhere or other there is provided for him a forum to which he can present his case, can support it by proof and have his hearing. That is 'due process of law,' a heritage from long centuries of struggle, which this nation and its constituent states have deposited in the corner stones of their written Constitutions. Everyone is entitled, somewhere, to his 'day in court.'" *Consolidated Gas Co.* v. *Mayer* (1906), 146 Fed. 150.

In the case of *Cotting* v. *Kansas City Stock Yards Co.* (1901), 183 U. S. 79, 22 S. Ct. 30, the court had before it for consideration an act of the legislature of Kansas regulating stock yards. One section of the act provided for extreme penalties against one for violating any of the provisions of the act and while the immediate question was not decided, because unnecessary, the court did use the following language which is applicable here (pp. 100-102):

> "Do the laws secure to an individual an equal protection when he is allowed to come into court and make his claim or defence subject to the condition that upon failure to make good that claim or defense the penalty for such failure either appropriates his property, or subjects him to extravagance and unreasonable loss? . . . It is doubtless

true that the State may impose penalties such as will tend to compel obedience to its mandates by all, individuals or corporations, and if extreme and cumulative penalties are imposed only after there has been a final determination of the validity of the statute, the question would be very different from that here presented. But when the legislature, in an effort to prevent any inquiry of the validity of a particular statute, so burdens any challenge thereof in the courts, that the party affected is necessarily constrained to submit rather than take the chances of the penalties imposed, then it becomes a serious question whether the party is not deprived of the equal protection of the laws."

In the case of *Ex Parte Young* (1908), 209 U. S. 123, 28 S. Ct. 441, the State of Minnesota passed an act regulating freight rates and for disobedience to the act the officers, directors, agents and employees of the company were made guilty of a misdemeanor and upon conviction each was subject to be imprisoned in the county jail for a period not exceeding ninety days. The court said (p. 147):

"If the law be such as to make the decision of the legislature or of a commission conclusive as to the sufficiency of the rates, this court has held such a law to be unconstitutional. . . . A law which indirectly accomplishes a like result by imposing such conditions upon the right to appeal for judicial relief as works an abandonment of the right rather than face the conditions upon which it is offered or may be obtained, is also unconstitutional. It may therefore be said that when the penalties for disobedience are by fines so enormous and imprisonment so severe as to intimidate the company and its officers from resorting to the courts to test the validity of the legislation, the result is the same as if the law in terms prohibited the company from seeking judicial constructions of laws which deeply affect its rights."

It was held that the provisions of the act relating to the enforcement of the rates by imposing such fines and possible imprisonment as a result of an unsuccessful

effort to test the validity of the law were unconstitutional.

Any person whose rights are prejudiced by the operation of a statute may raise the question as to its constitutionality. 12 C. J. 763. Prior to the enactment of the act in question it was undoubtedly the law in this state that one had the right to file an action in any court of competent jurisdiction for alienation of affections. The right was abolished by the act and certainly the appellant has the right to test its validity. Of course it is true that one who is not affected by a law can not raise the question of its constitutionality. Cooley's Constitutional Limitations, 6th Ed., 196. In the instant case the right of appellant to recover depends upon the constitutionality of the act in question and he is entitled to raise the question of its validity when such act is invoked to defeat his right to recover. *Miller* v. *Sincere* (1916), 273 Ill. 194, 112 N. E. 664; *Bonnett* v. *Vallier* (1908), 136 Wis. 193, 116 N. W. 883, 128 Am. St. R. 1061.

In the case of *State* v. *O'Leary* (1911), 43 Mont. 157, 167, 115 Pac. 204, it is said:

> "It is the general rule that one whose rights are not affected by a statute will not be heard to question its validity. . . . The converse of this is equally true: One whose rights are affected by the operation of a statute may question its validity. If chapter 113 is not in effect, then the relator has the right to have his certificate filed as presented, under sections 521-523, Revised Codes. If chapter 113 is in full force and effect then he does not have such right. The effect of this statute, then, if in force, is to deny to the relator a right which otherwise he would have, and this is sufficient to entitle him to raise the question of its validity. (*State* v. *Brown*, 38 Ohio St. 344; *Brooks* v. *State*, 162 Ind. 568, 70 N. E. 980.)"

The practical effect of Section 8 of the act under consideration is to deny and prohibit one from contesting

the constitutionality of the Act. If this is a lawful exercise of legislative power then the constitutionality of all acts of the legislature could be prevented from being tested by a similar penalty provision being enacted in such act. The legislature can not enact a law and at the same time pass upon its constitutionality. It is for the courts to pass upon this question.

We are of the opinion that section 8 of the act, insofar as it relates to the filing of any pleading or paper setting forth or seeking to recover upon a cause of action abolished or barred by the act, is unconstitutional. Section 9 of the act provides that each section and provision shall be construed separately and the invalidity of any section or provision shall not affect the validity of the remaining sections or provisions.

The demurrer was properly sustained to the complaint.

Judgment affirmed.