## Bullen v. Neuweiler

*James N. Robertson*, for plaintiff.

*Lloyd Goman* and *Clarence D. Bell*, for defendant.

ERVIN, P. J., January 19, 1949.—Defendant has filed preliminary objections to a complaint in replevin without bond. The objections must be dismissed.

The complaint alleges that on or about April 23, 1946, plaintiff, upon consideration and contemplation of marriage between the parties hereto, gave to defendant herein an emerald cut diamond ring and that on or about February 5, 1947, on consideration and contemplation of marriage, plaintiff gave to defendant a gold mesh necklace with pendant; that within the period aforesaid both parties agreed to marry each other at a future date; that within the month of August 1947 defendant broke her engagement with plaintiff and stated that she did not desire to get married. The complaint ended with a prayer that the court order and decree defendant herein to return to plaintiff herein the diamond engagement ring and the gold mesh necklace with pendant attached and for such other remedial action which the court may deem proper. The preliminary objections were based upon the contention that this action was barred by section 2 of the Act of June 22, 1935, P. L. 450, 48 PS §171.

Defendant admits that prior to 1935 plaintiff's complaint would have stated a good cause of action.

It was held in Ruehling v. Hornung, 98 Pa. Superior Ct. 535, that an engagement ring is given as a symbol of a contract to marry subject to an implied condition that if the marriage does not take place, either because of the death, or a disability recognized by the law on the part of either party, or by breach of the contract by donee, or its dissolution by mutual consent, the gift shall be returned. It was also held that in order to recover other gifts plaintiff must prove that they were given upon the condition that the marriage should take place. A complete annotation on this subject is found in 92 A. L. R. 604.

Plaintiff in the present case has alleged with respect to both pieces of jewelry that they were given "on consideration and contemplation of marriage between the parties hereto" and has alleged a breach of the contract by donee. It therefore follows that unless this law has been changed by the Act of 1935, plaintiff has stated a good cause of action.

Section 2 of the Act of June 22, 1935, P. L. 450, 48 PS §171, provides:

"All causes of action for breach of contract to marry are hereby abolished: provided, however, That this section shall not apply to contracts now existing or to causes of action which heretofore accrued."

Section 3 of the act provides:

"No act hereafter done within this Commonwealth shall operate to give rise, either within or without this Commonwealth, to any of the causes of action abolished by this act. No contract to marry, which shall hereafter be made within this Commonwealth, shall operate to give rise, either within or without this Commonwealth, to any cause of action for breach thereof. It is the intention of this section to fix the effect, status, and character of such acts and contracts, and to render them ineffective to support or give rise to any such

causes of action, within or without this Commonwealth."

The abuses which led to the enactment of this legislation are set forth in a comprehensive article in 41 Illinois Law Review 1. Primarily they were that recovery in actions for breach of promise, although founded in contract, was allowed on the theory of tort and included many elements of damages uncertain in amount, with the result that the mere possibility of a suit forced defendants to make substantial settlements out of court. This article stated:

"The abuse that thus grew up, especially in our larger cities, aroused public sentiment, and the result was that a movement for legislative reform got under way in 1935. In that year, the legislatures of seven states abolished the action for breach of promise. This was followed by similar action in one state each year for 1937, 1938, and 1939. In 1941 three more states abolished the action. And then one state in 1943 and one in 1945 joined the reform movement. Bills were introduced in a number of other states but failed to pass."

Because of the fact that so many State legislatures acted upon this problem at substantially the same time, we can find that they had similar objects in view. This purpose was expressed in the preamble to the New York act (Civil Practice Act, ch. 2-A), as follows:

"Declaration of public policy of state. The remedies heretofore provided by law for the enforcement of actions based upon alleged alienation of affections, criminal conversation, seduction and breach of contract to marry, having been subjected to grave abuses, causing extreme annoyance, embarrassment, humiliation and pecuniary damage to many persons wholly innocent and free of any wrongdoing, who were merely the victims of circumstances, and such remedies having been exercised by unscrupulous persons for their unjust enrich-

ment, and such remedies having furnished vehicles for the commission or attempted commission of crime and in many cases having resulted in the perpetration of frauds, it is hereby declared as the public policy of the state that the best interests of the people of the state will be served by the abolition of such remedies. Consequently, in the public interest, the necessity for the enactment of this article is hereby declared as a matter of legislative determination. L 1935, c. 263."

The statutes in most of the States have been held constitutional by the highest courts of those States. Thus, the New York statute was held constitutional in Fearon v. Treanor, 272 N. Y. 268, 5 N. E. (2d) 815; an appeal was dismissed by the United States Supreme Court for want of a substantial Federal question in 301 U. S. 667. The New Jersey statute was held constitutional in Bunten v. Bunten et al., 192 Atl. 727.

The Supreme Court of Illinois, however, in the case of Heck v. Schupp, 394 Ill. 296, 68 N. E. (2d) 464, held that the Illinois act was unconstitutional as being in violation of that part of the Bill of Rights which provided:

"Every person ought to find a certain remedy in the laws for all injuries and wrongs which he may receive in his person, property or reputation; he ought to obtain, by law, right and justice freely, and without being obliged to purchase it, completely and without denial, promptly, and without delay."

We have examined the Constitutions of New York and New Jersey and can find no similar clause in the Bill of Rights of those Constitutions.

However, in Pennington v. Stewart et ux., 212 Ind. 553, 10 N. E. (2d) 619, the Supreme Court of Indiana held the Indiana act constitutional in spite of the clause in the Indiana Bill of Rights, "and every man, for injury done to him in his person, property, or reputation, shall have remedy by due course of law," on the theory

that there were no property rights arising out of the marriage contract and that it is subject to the control of the legislature, which may by general enactment regulate and mold the relative rights and duties at pleasure.

There appears to be no case in the appellate courts of Pennsylvania passing upon the constitutionality of the Act of 1935. It was held constitutional by the Court of Common Pleas of Beaver County in McMullen v. Nannah, 49 D. & C. 516, but the constitutional question passed upon by the Illinois court was not discussed, in spite of the fact that article I, sec. 11 of our Constitution provides:

"All courts shall be open; and every man for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law, and right and justice administered without sale, denial or delay. Suits may be brought against the Commonwealth in such manner, in such courts and in such cases as the Legislature may by law direct."

In the present case we are not required to pass upon the broad question of the constitutionality of the Act of 1935 but only to decide whether it applies to actions to recover gifts made in contemplation of marriage and, if so, whether the act is constitutional in such circumstances. We do not believe that the Act of 1935 applies to suits of this nature. In the first place, we do not believe that such was the legislative intent. As previously stated, one of the principal evils of the situation which the legislation was intended to correct was the uncertainty of damages which left the amount of a verdict largely at the whim of a jury, subject only to the power of the court to reduce a verdict if it shocked the judicial conscience. However, actions of the present character are for the return of specific items of property, the value of which can be fixed. We do not believe that this reasoning is affected by the fact that this was an action in replevin without bond and therefore

conceivable that plaintiff, if successful, might obtain a money verdict rather than the physical return of the jewelry. This money verdict would be limited to the value of the jewelry and would be in substitution therefor rather than in the nature of general damages.

Secondly, we do not believe that the Act of 1935 applied to actions of this character because of the very language of the statute itself. It might be well to repeat the prohibition at this point. It reads: "All causes of action for breach of contract to marry are hereby abolished."

It was held in Alpha Claude Neon Corp. v. Pa. Distilling Co., Inc., 325 Pa. 140, that the words "cause of action" and "right of action" are synonymous. It defined "cause of action" as follows:

" 'The phrase "cause of action" as used in statutes fixing the jurisdiction of the courts according to where the cause of action arises, means that which creates the necessity for bringing the action. It arises when that is not done which should have been done, or that is done, which should not be done'."

It was said in Phila. v. Heinel Motors, Inc., 346 Pa. 528:

" 'One person may, at the same time, hold several distinct causes of action against another, and may maintain an action on any of such causes, without prejudicing his right to proceed upon any of the others. The fact that they might all be joined in one action, or that they arise out of the same transaction, is immaterial'."

We feel that such is the situation in the present case. If defendant, as alleged, refused to marry plaintiff, that very refusal might give rise to more than one cause of action. Thus, prior to the Act of 1935, it might have given rise to an action for damages for breach of the contract to marry and at the same time act as the implied condition subsequent contemplated in the en-

tirely separate contracts under which the jewelry was allegedly given by plaintiff to defendant. We feel that it is only the former cause of action which is interdicted by the Act of 1935 and that the second cause of action, although arising out of the same transaction, is not an action for a breach of the contract to marry but is an action for the recovery of property, the title to which never passed from plaintiff to defendant. This distinction was recognized in an article in the Michigan Law Review of May 1935 (vol. 33, page 979, et seq.), entitled "Legislative Attack on 'Heart Balm'." It was said:

"Recovery in actions for breach of promise has frequently included elements for which an independent action would be recognized on ordinary principles of tort, promissory estoppel or quasi-contract. The statute should not prevent recovery for such elements, even though the establishment of the cause of action might require evidence of a promise to marry and its breach. The danger of circumventing the statute is obvious. But courts cannot escape the burden of construing legislation as sweeping as this, so as to eliminate the evils aimed at without destroying rights not considered by the legislature, whose continued existence may be important to society and to individuals.

"Applying this reasoning, plaintiff might still recover special damages caused by defendant's fraudulent or other wrongful conduct involving incidentally the breach of a promise to marry. For example, a female plaintiff might recover her expenditures for a trousseau, or the value of a business or position abandoned at defendant's request. Likewise, she might recover the value of property transferred in reliance on defendant's promise, although in a sense intended as a gift. It is more doubtful whether she should continue to recover on a bond conditioned on marriage, since such an action is substantially the same as an action

for damages for breach of promise. And perhaps she should not be permitted to recover merely for loss of other marriage opportunities, since the injury could no longer be traced to any legally wrongful act on the part of defendant, nor would she have incurred any measurable pecuniary loss in reliance on his conduct."

Finally, we believe that the Act of 1935 does not apply to actions of this character because of the well recognized principle that where there are two constructions which can be placed upon an act of assembly, one of which will make it constitutional and the other unconstitutional, the former will always be preferred: Fidelity-Phila. Trust Co. et al. v. Hines, 337 Pa. 48.

Without passing upon the question as to whether the Act of 1935 might be constitutional as to actions for damages for breach of promise or whether any of the individual sections might in themselves be unconstitutional, we are definitely of the opinion that if the act should be construed to abolish causes of action to determine title to property, it would be a violation of article I, section 11 of the Constitution previously quoted.

We therefore hold that the present action is not barred by the Act of 1935.

We are aware of the many cases in New York which have held that actions to recover money, jewelry and other property delivered by plaintiff to defendant in connection with a mutual promise of marriage between the parties, are barred by the New York statute, but we do not agree with the conclusions reached by those courts. In the first place, in the early cases no reasons for the decisions were set forth. Thus, in the earliest case, Andie v. Kaplan, 263 App. Div. 884, 32 N. Y. S. (2d) 429, which was a 3-to-2 decision in the lower court, it is only by reading the dissenting opinion that we find that the "heart balm" act is involved. This case was affirmed by the Court of Appeals in 288 N. Y. 685,

43 N. E. (2d) 82, without opinion. Similarly, in the case of Josephson v. Dry Dock Savings Institution, 45 N. Y. S. (2d) 120, affirmed in 292 N.Y. 666, 56 N. E. (2d) 96, no opinion was filed in either court. The recent New York cases are decided on the basis of stare decisis, with the judges expressing dissatisfaction. Furthermore, the New York act itself provides: "This article shall be liberally construed to effectuate the objects and purposes thereof and the public policy of the state as hereby declared."

No such provision appears in our Act of 1935 and therefore, being in derogation of common law, must be strictly construed.

The entire field covered by this subject, covering both the constitutionality of the various acts and the application of the acts to actions to recover property, is comprehensively annotated in 109 A. L. R. 1234; 158 A. L. R. 617 and 167 A. L. R. 235.

For the foregoing reasons defendant's preliminary objections must be dismissed.