MRS. EMILY LEBOHM V. CITY OF GALVESTON

No. A-4814. Decided January 19, 1955.
Rehearing overruled March 2, 1955.
(275 S.W. 2d Series, 951)

*Barker & Barker* and *Jerry D. Barker,* all of Galveston, for petitioner.

The Court of Civil Appeals erred in holding that a municipal corporation could be exempt from liability for acts of negligence occurring when said corporation was acting in its proprietary capacity, and that the charter of the City of Galveston, exempting itself from negligence in connection with the construction of its streets and sidewalks, was constitutional. Hanks v. City of Port Arthur, 121 Texas 202, 48 S.W. 2d 944; Amarillo v. Green, 267 S.W. 702; City of Wichita Falls v. Lipscomb, 50 S.W. 2d 867.

*H. E. Kleinecke, Jr.,* City Attorney, *James A. Piper,* Assist-

ant City Attorney of Galveston, *Kleinecke, Naussbaum & Piperi,* all of Galveston, for respondent.

MR. JUSTICE CALVERT delivered the opinion of the Court.

While using a street in the City of Galveston, petitioner tripped on an obstruction therein and fell, sustaining injuries made the basis of this suit. By special exception, and otherwise, respondent interposed Section 47 of its Charter — a charter granted by special act of the Legislature in 1903 — as an absolute defense to petitioner's suit for damages. The defenses were overruled and the case was submitted to a jury which made findings of negligence on the part of the City, proximate cause and damages, resulting in a trial court judgment for petitioner. Holding that the evidence was sufficient to support the jury findings but that Section 47 of the Charter was valid and an absolute defense to the suit, the Court of Civil Appeals reversed the judgment of the trial court and rendered judgment for respondent. 268 S.W. 2d 782.

There is no question but that the afore-mentioned Charter provision is an absolute defense to the suit if it is valid. It reads as follows: "That the City of Galveston shall not be liable in damages for any injury or injuries to persons or to property caused by filling, raising, grading or elevating any property within the City of Galveston, or in the prosecution of any public improvement in said City, or on account of any defect of any street, sidewalk or other public place."

As sustaining the validity of the Charter provision respondent relies on Williams v. City of Galveston, 41 Texas Civ. App. 63, 90 S.W. 505, writ refused; and Reegan v. City of Galveston, Texas Civ. App., 24 S.W. 2d 61, writ dismissed, in which the validity of this Charter provision was in issue and in which it was sustained, in each instance, by the Galveston Court of Civil Appeals against the contention that it was in violation of Article I, Section 13 of the Constitution of Texas reading in part as follows: "All courts shall be open, and every person for an injury done him, in his lands, goods, person or reputation, shall have remedy by due course of law."

As supporting her position that the provision is invalid petitioner relies, principally, on City of Amarillo v. Tutor, Texas Com. App., 267 S.W. 697; City of Amarillo v. Green, Texas Com. App., 267 S.W. 702; Hanks v. City of Port Arthur, 121 Texas 202, 48 S.W. 2d 944, 83 A.L.R. 278; City of Wichita Falls v.

Lipscomb, Texas Civ. App., 50 S.W. 2d 867, writ refused, and City of Terrell v. Howard, 130 Texas 459, 111 S.W. 2d 692.

None of the cases cited by petitioner involved the Galveston Charter provision and the Court of Civil Appeals chose, understandably, to follow and be governed by the Williams and Reegan cases. Since the Williams case was a one-point case, it is difficult to understand how this Court could have refused a writ of error except upon the theory that it was in agreement with the holding of the Galveston Court that the provision was valid. It seems to us, however, that the question needs reconsideration in the light of later decisions of this Court.

■ It may be noted that the Charter provision in question here is subject to the same objections as those enumerated in the opinion of the Commission of Appeals which prompted this Court to strike down the statute and ordinance in City of Amarillo v. Tutor and City of Amarillo v. Green, to wit: 1. The provision exempts the City of Galveston from liability for damage to property in violation of Article I, Section 17 of the Constitution prohibiting the taking or damaging of property without adequate compensation being made. 2. It exempts the City from liability for damage growing out of injuries resulting in death and therefore conflicts with a general law as enacted by the Legislature. (Article 4671, Vernon's A.C.S.). 3. It exempts the City from liability for damage to property or injuries to persons wilfully or intentionally inflicted and to that extent is violative of Article I, Section 13 of the Constitution. With similar findings in the Tutor case the Court proceeded to hold that the statute and ordinance there involved were subject to so many objections that they would be held invalid in their entirety. A similar conclusion was reached in Hanks v. City of Port Arthur, that is, that the Charter provision being invalid in some respects it would be held invalid in its entirety. We might rest our decision in this case on these holdings in the Tutor and Hanks cases but choose not to do so.

As the major basis for our conclusion that Section 47 of the Galveston Charter is invalid, we consider that the necessary effect of Hanks v. City of Port Arthur and City of Terrell v. Howard, and as well the direct holding in City of Wichita Falls v. Lipscomb, is to deny to legislative bodies the right to arbitrarily abolish causes of action against municipalities where such causes of action are well established and well defined in the common law.

Hanks v. City of Port Arthur and City of Terrell v. Howard did not involve the validity of exemption provisions but their appositiveness to that problem is apparent. In both cases this Court declared, unequivocally, that charter provisions or ordinances imposing unreasonable restrictions on the right to sue a city for damages for injuries for which the liability of the city was well established at common law were violative of Article I, Section 13 of the Constitution, quoted above, and therefore invalid. It is true that in both cases the Court noted particularly that it was not called on to pass on the validity of an exemption provision, but we can perceive no reasonable basis for striking down the one provision and upholding the other. If the due process clause of our Constitution inhibits legislation unreasonably restricting the right to sue in a given field it also inhibits legislation arbitrarily abolishing the right to sue in the same field. But it is unnecessary to rely entirely on the two decisions mentioned. As indicated above, it was the direct holding of the Fort Worth Court of Civil Appeals in Wichita Falls v. Lipscomb that a charter provision abolishing rights of action against the City of Wichita Falls for damages for personal injuries and exempting the City from liability therefor was in violation of Article 1, Section 13 of the Constitution and therefore invalid. In that case injury was sustained by reason of the negligence of the City in the operation of its water department, a proprietary function, while in this the injury was sustained by reason of negligence of the City in the maintenance of its streets, a proprietary function. By refusal of a writ of error in Wichita Falls v. Lipscomb the opinion of the Court of Civil Appeals in the case was made the opinion of this Court. Thompson v. Gibbs, 150 Texas 315, 240 S.W. 2d 287. We know of no sound basis for distinguishing the two cases and conclude that the question here is foreclosed by the decision in that case. The charter provision is declared to be invalid.

■ In an able amicus curiae brief Honorable J. M. Singer, City Attorney of the City of Corpus Christi and President of the Texas City Attorneys' Association, suggests that in point of fact, and contrary to the holding of this Court in City of Galveston v. Posnainsky, 62 Texas 118, 50 Am. Rep. 517, cities are actually performing a governmental function in the building and maintenance of streets and ought to enjoy the same exemption from liability as is accorded to the State and counties in the building and maintenance of public roads and highways. This exact reasoning in large measure, was the basis for this Court's original holding in City of Navasota v. Pearce, 46 Texas 525, that a city was not liable for injuries resulting from its negli-

gence in the maintentance of streets, but the subject was re-examined in City of Galveston v. Posnainsky, supra, and the reasoning rejected. It is admitted on all hands, and it was in City of Navasota v. Pearce, that the great weight of authority supports the view adopted in the Posnainsky case and adhered to in this state since that time. Considering that the principle is now well established in the municipal law of this state, in the absence of a very clear showing that it was erroneously established we regard the matter as governed by the rule of stare decisis.

The judgment of the Court of Civil Appeals is reversed and the judgment of the trial court is affirmed.

Opinion delivered January 19, 1955.

ON REHEARING

MR. JUSTICE CALVERT delivered the opinion of the Court.

In its motion for rehearing the City of Galveston expresses the fear that our holding on original submission threatens the validity of our Workmens Compensation Act. Vernon's Texas Civ. Stat. Art. 8306 et seq. Obviously what we said in our opinion has been misunderstood. We chose our words with care so that they would not be misunderstood, but misunderstanding by respondent City forecasts possible misunderstanding by others and prompts us to enlarge upon the main thesis of that opinion.

■ We said that Section 13 of Article I of our Constitution denies "to legislative bodies the right to arbitrarily abolish causes of action against municipalities where such causes of action are well established and well defined in the common law." Perhaps it would have been more in keeping with the language of the constitutional provision had we said that it prohibited legislative bodies from arbitrarily withdrawing all legal remedies from one having a cause of action well established and well defined in the common law, but the practical result would have been the same, the only distinction being in unimportant phrasing. In either case proper respect must be accorded the emphasis we intended to give the word "arbitrarily".

■ The validity of our Workmens Compensation Act was long since sustained by this Court in Middleton v. Texas Power & Light Co., 108 Texas 96, 185 S.W. 556, and by the Supreme Court of the United States in the same case. See 249 U.S. 152,

63 L. Ed. 527, 39 Sup. Ct. 227. It may be voted that the Legislature did not by the Workmens Compensation Act *arbitrarily* abolish the employee's common law cause of action for negligence against the employer, or *arbitrarily* withdraw from him all legal remedy therefor; it simply substituted a different but certain and adequate legal remedy for the one that existed at common law. Respondent can find no comfort in the Middleton case. In writing on the question the Supreme Court of the United States said that the citizen had no vested right to have the rules of law remain unchanged for his benefit, and said: "The definition of negligence, contributory negligence, and assumption of risk, the effect to be given to them, the rule of respondent superior, the imposition of liability without fault, and the exemption of liability in spite of fault—all these, as rules of conduct, are subject to legislative *modification.*" The court went on to hold that a plan imposing liability on the employer irrespective of fault, "and requiring the employee to assume all risk and damages over and above the statutory schedule, when established *as a reasonable substitute* for the legal measure of duty and responsibility previously existing, may be made compulsory upon employees as well as employers." (Emphasis ours throughout). See also N.Y. Central Ry. Co. v. White, 243 U.S. 188, 61 L. Ed. 667, 674, 37 Sup. Ct. 247, where while not deciding the question, the court expressed doubt that a state might "suddenly set aside all common-law rules respecting liability as between employer and employee, without providing a reasonably just substitute."

Another class of cases involving a kindred question are those passing on the validity of so-called "Guest Statutes." A Connecticut Statute Pub. Acts 1927, Ch. 308, limiting liability of an owner or operator of an automobile to a gratuitious passenger to those situations where injury to the guest grew out of intentional or heedless and reckless conduct on the part of the host was sustained by the Connecticut Court on the ground that it only revised or redefined the common-law duty of care of the host to the guest. Silver v. Silver, 108 Conn. 371, 143 Atl. 240, 65 A.L.R. 943. The Supreme Court of the United States in the same case, upheld the constitutionality of the statute on the ground that it represented a reasonable and permissible exercise by the Legislature of the state's police power to correct abuses and evils arising out of a growing multiplicity of suits by gratuitous passengers contrary to the public welfare, 280 U.S. 117, 74 L. Ed. 221, 50 Sup. Ct. 57, 65 A.L.R. 943. In sustaining the validity of a similar statute in this state (Article 6701b, V.A.C.S.) this Court cited the decision of the United States Supreme Court in

the Silver case, without comment. Campbell v. Paschall, Texas Com. App., 121 S.W. 2d 593 (opinion approved). On the other hand, where the Legislature did not undertake to redefine the duty of care but sought to withdraw the remedy of the guest altogether, irrespective of the nature or quality of the host's conduct, the Supreme Court of Oregon struck down the statute as violative of a constitutional provision identical with Section 13 of Article I of our Constitution. Stewart v. Houk, 127 Ore. 589, 271 Pac. 998, 272 Pac. 893, 61 A.L.R. 1236.

Under authority of a constitutional provision similar to Section 13 of Article I of our Constitution the Supreme Court of Illinois struck down a statute abolishing all causes of action for alienation of affection upon a conclusion that the statute did not subserve the public welfare but was contrary to the public policy of that state. Heck v. Schupp, 394 Ill. 296, 68 N.E. 2d 464, 167 A.L.R. 232. For approving comment, see 42 Ill. L. Rev. 233.

Cases reaching an opposite result in dealing with the same problem went off largely on the theory that rights growing out of the marital relationship were not "property rights" entitled to protection under a Constitutional provision for a remedy for injury to one's "person, property or reputation," and that the marital relationship and rights flowing therefrom were peculiarly within the field of permissible legislative regulation. See Hanfgarn v. Mark, 274 N.Y. 22, 8 N.E. 2d 47; Pennington v. Stewart, 212 Ind. 553, 10 N.E. 2d 619.

Thus it may be seen that legislative action withdrawing common-law remedies for well established common-law causes of action for injuries to one's "lands, goods, person or reputation" is sustained only when it is reasonable in substituting other remedies, or when it is a reasonable exercise of the police power in the interest of the general welfare. Legislative action of this type is not sustained when it is arbitrary or unreasonable.

Now to a brief re-examination of the charter provision. It does not modify the remedy for causes of action against the City, nor does it redefine the duty of care the City owes to those using its streets. It purports to withdraw all remedy from one injured by the City's conduct, whether the injury arises out of negligence, simple or gross, or from willful acts and omissions. No broad public policy or general welfare considerations are advanced to justify the charter provision as a reasonable exercise of the police power. We can think of none that could be advanced inasmuch as the operational effect of the provision

extends only to the city limits of the City of Galveston. In this connection, we are not to be understood as holding that the Legislature could not by general law abolish all causes of actions against cities for injuries growing out of simple negligence in the maintenance of streets; we have no occasion to do so. A decision of that question can come in due time if such a statute is ever enacted.

What is here said on motion for rehearing in reality adds nothing to the language of the original opinion; nor does it detract from our holding that the charter provision represents an attempted exercise of legislative power which is prohibited by Section 13 of Article I of the Constitution.

■ Our holding is, of course, limited to those situations in which the legislative action seeks to relieve a municipality of liability for injuries caused by its negligence in the performance of a proprietary function. When a municipality performs a governmental function it needs no legislative action to relieve it of the consequences of its negligence. We adhere to our holding that the maintenance of the street in question was a proprietary function. We are not confronted with a case in which injury occurred on a state-designated highway through a city.

The motion for rehearing is overruled.

Opinion on rehearing delivered March 2, 1955.