**Opinion issued February 26, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

NOS. 01-13-00267-CV
01-13-00233-CV

———————————

**JAY H. COHEN, INDIVIDUALLY AND AS TRUSTEE OF THE JHC TRUSTS I AND II, Appellant**

**V.**

**SANDCASTLE HOMES, INC., Appellee**

**✳ ✳ ✳ ✳**

**JAY H. COHEN, INDIVIDUALLY AND AS TRUSTEE OF THE JHC TRUST I AND II, Appellant**

**V.**

**NEWBISS PROPERTY, LP, Appellee**

**On Appeal from the 234th District Court
Harris County, Texas
Trial Court Case Nos. 2010-20973A & 2010-20973B**

## O P I N I O N

In related proceedings, appellant Jay H. Cohen, Individually and as Trustee of the JHC Trusts I and II, challenges the trial court's summary judgments granted in favor of appellees Sandcastle Homes, Inc. and NewBiss Property, LP Specifically, Cohen challenges the trial court's conclusion that the Sandcastle and NewBiss established their status as bona-fide purchasers of certain real property in which Cohen claims an interest. The primary issue we must resolve is whether the purchaser of real property can establish bona-fide purchaser status if that purchaser has actual knowledge about information contained in a notice of lis pendens that has been filed, and then later expunged, on the property. We answer that question in the affirmative, and affirm the trial court's judgments.

## BACKGROUND

The underlying suit involves Cohen's claims against numerous defendants related to several parcels of real estate. The summary judgments at issue in favor of Sandcastle and NewBiss were severed from the remaining claims against other parties, rendering them final and appealable.[1] Because only these two judgments

---

[1] The summary judgment in favor of NewBiss was severed into 2010-20973A; the summary judgment in favor of Sandcastle was severed into cause number 2010-20973B.

are at issue, we limit our discussion to basic background facts and discussion of the summary-judgment evidence relevant to these judgments.

Through a series of transfers over the years, Cohen transferred several pieces of real estate into different partnerships. In the underlying lawsuit, Cohen claims that defendant Mathew Dilick acted wrongfully and fraudulently (both individually and through entities he controlled) with respect to management of the properties through a series of transfers, sales, and debt encumbrances. In conjunction with his lawsuit, Cohen also filed numerous notices of lis pendens on various properties.

This appeal involves properties covered by Cohen's July 27, 2010 Second Supplemental Notice of Lis Pendens. That notice impacts several properties, including the property at issue in this case, i.e., 2.4373 acres known as the "West Newcastle Property." That notice identifies the underlying suit and states its purpose is to set aside certain transfers of real property, including the prior transfer of the West Newcastle Property from Flat Stone II, Ltd. to West Newcastle Ltd, and to "set aside and cancel liens" granted by Flat Stone II to Regions Bank.

Several defendants in the underlying proceedings filed emergency motions to expunge the notices of lis pendens.

**September 1 & 7, 2010.** The trial court signed orders granting all the motions to lift the lis pendens notices,[2] concluding that Cohen failed to state direct real-property claims, and specifically noting that it "did not consider evidence or make a determination of the sufficiency of the evidence." Cohen challenged these interlocutory expungement orders in this Court, filing a petition for writ of mandamus and a motion to stay the trial court's orders.

**September 30, 2010**. This Court granted Cohen's motion to stay the trial court's orders expunging the notices of lis pendens.

**October 8, 2010.** Defendant Dilick made the first of two property transfers relevant to the subject matter of this appeal. Specifically, he effectuated the sale from titleholder West Newcastle Ltd. of a 0.95 acres portion of the West Newcastle Property ("West Newcastle Tract I") to appellant Sandcastle Homes for $750,000.

**April 14, 2011**. This Court conditionally granted Cohen's request for mandamus relief from the trial court's orders expunging all of the notices of lis pendens. *In re Cohen*, 340 S.W.3d 889, 899–900 (Tex. App.—Houston [1st Dist.] 2011, orig. proceeding). In our opinion, we first noted that—because of recent statutory amendments—there are two ways to successfully establish that a notice of lis pendens should be expunged, i.e., by establishing that: (1) the pleadings do not "contain a real property claim" or (2) that the claimant has not shown the

---

[2] The order relating to the West Newcastle Property at issue here was signed on September 7, 2010.

4

"probable validity" of the claim. *Id*. at 892 (citing TEX. PROP. CODE ANN. § 12.0071(c)). We held that the trial court erred by concluding that the face of Cohen's pleadings did not articulate a real-property claim. *Id*. at 899. Although we accordingly directed the trial court to vacate its orders expunging the notices of lis pendens based on the pleadings, we expressed no opinion about whether Cohen could demonstrate the "probable validity" of his claims following an evidentiary hearing. *Id*. at 900.

**May 11, 2011.** Cohen added Sandcastle as a defendant in the underlying suit, seeking to set aside its purchase of West Newcastle Tract I.

**May 17, 2011.** The trial court held another hearing, this time to hear evidence Cohen offered in support of his July 27, 2010 Second Supplemental Notice of Lis Pendens, which burdened the entire West Newcastle Property and other properties.

**June 23, 2011.** Defendant Dilick transferred the remaining 1.483 acre portion of the West Newcastle Property (West Newcastle Tract II) from titleholder West Newcastle, Ltd. to a previous titleholder, Flat Stone II.

**June 29, 2011**. The trial court entered an order stating that Cohen "failed to establish by a preponderance of the evidence the probable validly of a real property claim" and that the "Second Supplemental Notice of Lis Pendens filed by Plaintiff on July 27, 2010 is void." Accordingly, the court ordered the notice burdening the

5

West Newcastle Property (now split into Tracts I and II) was "cancelled and expunged in its entirety."

Cohen filed a petition for writ of mandamus and motion for emergency stay in this Court challenging the trial court's expungement orders. We denied the motion and petition.

**September 26, 2011**. Defendant Dilick made the second property transfer relevant to this appeal. He effectuated a sale of West Newcastle Tract II to from Flat Stone II to appellee NewBiss for approximately $1.8 million.

**November 10, 2011**. Cohen added NewBiss as a defendant in the underlying suit, seeking to set aside its purchase of West Newcastle Tract II.

## SUMMARY JUDGMENTS

### A.    Sandcastle Homes

Sandcastle filed a traditional motion for summary judgment on its affirmative defense that it was a "bona fide purchaser, based on the fact that it purchased [West Newcastle Tract I] from West Newcastle, Ltd., in good faith, for value, and without knowledge of any competing claims of Cohen or the Cohen Trusts." Sandcastle acknowledged that there was a lis pendens in effect on the property at the time of purchase, but argued that "[s]ince the instrument was subsequently declared void, it has no force and effect and cannot serve as 'constructive' notice to Sandcastle." Sandcastle contended that its summary-

6

judgment evidence otherwise established its status as a bona fide purchaser as a matter of law.

Cohen responded that summary judgment in Sandcastle's favor was not appropriate because, he alleged, (1) there was a fact issue about whether Sandcastle had actual notice, (2) there was a fact issue about whether Sandcastle had constructive notice, (3) the trial court erred by expunging the lis pendens, and (4) the statute providing for expungement of notices of lis pendens is unconstitutional.

On September 12, 2012, the trial court granted Sandcastle's motion. On February 22, 2013, the trial court severed the summary judgment in favor of Sandcastle and rendering judgment between Cohen and Sandcastle final.

## B. NewBiss

NewBiss filed a traditional motion for summary judgment, also asserting that it was entitled to summary judgment because its summary-judgment evidence established, as a matter of law, that it was a protected bona-fide purchaser for value. It acknowledges that it was aware of this lawsuit, but argued that it "rightfully relied on [the] court's order of expungement as an affirmative determination of [Cohen's] lack of right or interest" in the West Newcastle Tract II. Because, it asserted, it had "no independent knowledge of any other facts that

7

would place it on notice that Flat Stone II did not have full authority to convey" the property, "NewBiss was a good faith purchaser as a matter of law."

Cohen responded that summary judgment in NewBiss's favor was not appropriate because, he alleged, (1) NewBiss had actual notice of his lawsuit, which was not legally impacted by expungement of the lis pendens, (2) the trial court erred by expunging the lis pendens, (3) the statute providing for expungement of notices of lis pendens is unconstitutional, (4) NewBiss's summary judgment motion did not address his direct claim against NewBiss.

On September 12, 2012, the trial court granted NewBiss's motion. On February 8, 2013, the trial court severed the summary judgment in favor of NewBiss, rendering judgment between Cohen and NewBiss final.

## ISSUES ON APPEAL

**A. Issues Cohen raises challenging the Sandcastle judgment**

1.  "The trial court erred in granting Sandcastle's summary judgment because Cohen raised a fact issue as to whether Sandcastle had actual notice of his claims."

2.  "The trial court erred in granting Sandcastle's summary judgment because Cohen raised a fact issue as to whether Sandcastle had constructive notice of his claims."

3.  "To the extent that the trial court concluded that its June 29, 2011 order expunging Mr. Cohen's Second Supplemental Notice of Lis Pendens obliterated from existence and from all effect any other kind of notice arising independently of the Lis Pendens obtained by Sandcastle in any manner and at any time whatsoever, such conclusion was erroneous as a matter of law."

8

4. "The trial court erred in granting Sandcastle's summary judgment because Cohen's Second Supplemental Lis Pendens should not have been expunged and therefore Sandcastle was not a bona fide purchaser."

5. "Even if Sandcastle was a bona fide purchaser, the trial court erred in granting summary judgment because the sale to Sandcastle was void, and therefore Sandcastle could not take good title."

6. "The trial court erred in granting Sandcastle's summary judgment because Tex. Prop. Code § 12.0071 is unconstitutional and did not provide the trial court a permissible basis by which to expunge Mr. Cohen's lis pendens, and therefore Sandcastle is not a bona fide purchaser."

7. "The trial court abused its discretion by expunging Mr. Cohen's Second Supplemental Lis Pendens."

## B. Issues Cohen raises challenging the NewBiss judgment

1. "The trial court erred in granting NewBiss's summary judgment because NewBiss failed to conclusively establish its bona fide purchaser affirmative defense."

2. "The trial court erred in granting NewBiss's summary judgment because Cohen's summary judgment evidence raised a fact issue as to whether NewBiss had actual notice of Cohen's claims."

3. "To the extent that the trial court concluded that its June 29, 2011 order expunging Cohen's Second Supplemental Notice of Lis Pendens obliterated from existence and from all effect any other kind of notice arising independently of the lis pendens, however or whenever obtained by NewBiss, such conclusion was erroneous as a matter of law."

4. "The trial court erred in granting NewBiss's summary judgment because Cohen's Second Supplemental Lis Pendens should not have been expunged and therefore NewBiss is not a bona fide purchaser."

9

5. "Even if NewBiss was bona fide purchaser, the trial court erred in granting summary judgment 'in all respects,' because the sale to NewBiss was void, and therefore NewBiss could not take good title."

6. "The trial court erred in granting NewBiss's summary judgment because the statute pursuant to which the trial court expunged Cohen's lis pendens is unconstitutional and did not provide the trial court a permissible basis by which to expunge Cohen's lis pendens, and therefore NewBiss was not a bona fide purchaser."

7. The trial court abused its discretion by expunging Cohen's Second Supplemental Lis Pendens."

8. "The trial court abused its discretion by expunging Cohen's November 14, 2012 lis pendens."

## STANDARD OF REVIEW

We review a summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Under the traditional summary-judgment standard, the movant has the burden to show that no genuine issues of material fact exist and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Nixon v. Mr. Prop. Mgmt. Co.*, 690 S.W.2d 546, 548 (Tex. 1985). In determining whether there are disputed issues of material fact, we take as true all evidence favorable to the nonmovant and indulge every reasonable inference in the nonmovant's favor. *Nixon*, 690 S.W.2d at 548–49. A defendant moving for summary judgment must conclusively negate at least one essential element of each of the plaintiff's causes of action or conclusively establish each element of an affirmative defense. *Sci. Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex.

10

1997). If the summary judgment does not specify the grounds on which it was granted, the appealing party must demonstrate on appeal that none of the proposed grounds is sufficient to support the judgment. *Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 79 (Tex. 1989); *Tilotta v. Goodall*, 752 S.W.2d 160, 161 (Tex. App.—Houston [1st Dist.] 1988, writ denied).

## LIS PENDENS

"[D]uring the pendency of an action involving title to real property, the establishment of an interest in real property, or the enforcement of an encumbrance against real property," a party seeking affirmative relief may file a lis pendens in the real property records of the county where the property is located. TEX. PROP. CODE ANN. § 12.007(a) (West 2014). The notice must contain certain information, including the style and cause number of the proceedings, the court where it is pending, the names of the parties, identification of the kind of proceedings, and a description of the property affected. *Id*. § 12.007(b).

A properly filed lis pendens is not itself a lien, but rather it operates as constructive notice "to the world of its contents." *See* TEX. PROP. CODE ANN. § 13.004(a) (West 2014); *see also B & T Distribs., Inc. v. White*, 325 S.W.3d 786, 789 (Tex. App.—El Paso 2010, no pet.) ("The purpose of a notice of *lis pendens* is to put those interested in a particular tract of land on inquiry about the facts and the

11

issues involved in the suit and to put prospective buyers on notice that they acquire any interest subject to the outcome of the pending litigation.").

The Property Code expressly provides that a properly filed notice of lis pendens prevents a purchaser for value from acquiring property free and clear of the encumbrance referenced in the lis pendens:

> A transfer or encumbrance of real property involved in a proceeding by a party to the proceeding to a third party who has paid a valuable consideration and who does not have actual or constructive notice of the proceeding is effective, even though the judgment is against the party transferring or encumbering the property, unless a notice of the pendency of the proceeding has been recorded and indexed under that party's name as provided by Section 12.007(c) in each county in which the property is located.

TEX. PROP. CODE § 13.004(b); *see also Cherokee Water Co. v. Advance Oil & Gas Co.*, 843 S.W.2d 132, 135 (Tex. App.—Texarkana 1992, writ denied) ("The rule effectively prevents a grantee from being an innocent purchaser.").

A notice of lis pendens may be expunged, however, if certain procedures are followed and the trial court determines that the party filing the notice either has not pleaded a real-property claim or demonstrated the probable validity of the claim:

> (a) A party to an action in connection with which a notice of lis pendens has been filed may:
>
>> (1) apply to the court to expunge the notice; and
>>
>> (2) file evidence, including declarations, with the motion to expunge the notice.
>
> . . . .
>
> (c) The court shall order the notice of lis pendens expunged if the court determines that:

(1) the pleading on which the notice is based does not contain a real property claim; [or]

(2) the claimant fails to establish by a preponderance of the evidence the probable validity of the real property claim;

. . . .

TEX. PROP. CODE § 12.0071(c). If an order expunging a notice is properly recorded, there are statutory limitations on the ability of a party to charge a purchaser with notice based upon the notice of lis pendens:

(f) After a certified copy of an order expunging a notice of lis pendens has been recorded, the notice of lis pendens and any information derived from the notice:

(1) does not:

(A) constitute constructive or actual notice of any matter contained in the notice or of any matter relating to the proceeding;

(B) create any duty of inquiry in a person with respect to the property described in the notice; or

(C) affect the validity of a conveyance to a purchaser for value or of a mortgage to a lender for value; and

(2) is not enforceable against a purchaser or lender described by Subdivision (1)(C), regardless of whether the purchaser or lender knew of the lis pendens action.

TEX. PROP. CODE § 12.0071(f).

**WHAT IS THE EFFECT OF AN EXPUNGED LIS PENDENS?**

The parties disagree about how the trial court's expungement of the notices of lis pendens on Tract I and Tract II impacted Sandcastle's and NewBiss's ability to establish bona-fide purchaser status. The notice of lis pendens on Tract I was

13

expunged after Sandcastle's purchase; the notice of lis pendens was expunged on Tract II before NewBiss's purchase. Cohen asserts that, in both cases, the purchasers were not entitled to bona-fide purchaser protection because they otherwise had notice of his lawsuit. We disagree.

**A. Sandcastle**

With regard to Sandcastle, in his first issue Cohen points to evidence he contends raises a fact issue about Sandcastle's actual notice of his lawsuit. Specifically, he cites Dilick's deposition testimony that he told Sandcastle—both prior to its purchase and again at closing—about the lawsuit. Dilick also altered the disclosure statement at closing to change "Owner is not a part to any pending law suits" to "Owner is not a future party to any pending future known law suits." Cohen argues that while the lis pendens operated as constructive notice "to the world of its contents," TEX. PROP. CODE § 13.004(a), "actual notice is binding independent of any question of constructive notice." *Hexter v. Pratt*, 10 S.W.2d 692, 693–94 (Tex. Comm. App. 1928, judgm't adopted). Thus, he asserts, "[b]y granting Sandcastle's motion for summary judgment, the trial court may have impermissibly conflated the issue of actual notice with the issue of constructive notice."

Alternatively, in his second issue Cohen argues that his filing this Court's stay of the order expunging the lis pendens on Tract I in the real-property records

14

put Sandcastle on constructive notice of his lawsuit because it was in the chain of title. *See Hexter*, 10 S.W.2d at 693. Thus, he contends, "[b]ecause on the day it purportedly purchased the [Tract I] Sandcastle had constructive notice of Cohen's claims thereto (and presumed actual knowledge as well), from publically available information other than that derived from Cohen's lis pendens, *i.e.*, from a separate, independent and publicly filed document, Sandcastle did not qualify as a bona fide purchaser, and summary judgment in its favor was improper."

Finally, in his third issue, Cohen argues to the extent that the trial court concluded its order expunging the lis pendens on Tract I "obliterated from existence and from all effect any other kind of notice arising independently of the lis pendens, however or whenever obtained by Sandcastle, such conclusion was erroneous as a matter of law." Cohen acknowledges that that this "issue appears to be one of first impression," and argues that section 12.0071(f) should be construed narrowly, such that a party cannot be a bona-fide purchaser—even if a notice of lis pendens has been expunged—if the party has obtained any information about the lawsuit independent of the actual lis pendens.

## B. NewBiss

With regard to NewBiss, in his first issue Cohen points to NewBiss's own summary-judgment evidence that he contends conclusively establishes NewBiss's actual notice of his lawsuit. Specifically, he cites an affidavit by Greg Lewis, a

15

NewBiss representative, which states "[d]uring our discussion on the terms of the sale, Dilick advised me a lis pendens had been filed on the Property." Thus, Cohen contends, NewBiss "admitted [it] did *not* learn of Cohen's lis pendens, or the information within it, *via* the *lis pendens* itself." Because Dilick instead told Lewis about the notice of lis pendens, Cohen argues that NewBiss had actual notice that rendered the lis pendens and its expungement irrelevant.

In his second issue, Cohen alternatively argues that his summary-judgment evidence raises a fact issue about NewBiss's actual notice. Cohen cites an affidavit by John Riddle, who stated that—when he learned that NewBiss had Tract II under contract—he asked Lewis if he knew about Cohen's lawsuit and offered to get Lewis a copy of the petition. Lewis declined the offer, telling Riddle that "he knew all about it." Cohen contends that this evidence defeats any argument that NewBiss did not have actual knowledge about his lawsuit.

Finally, Cohen argues that, if the trial court's summary judgment was premised upon its conclusion that the expungement of his Second Supplemental Notice of Lis Pendens obliterated all forms of notice (actual and constructive) about his claims, that holding is erroneous.

### C. Analysis

Cohen's first three issues with regard to both the Sandcastle and NewBiss judgments require us to determine, as a matter of first impression, the impact of the

trial court's expungement of the notices lis pendens on the Newcastle Property Tract I and Tract II on the appellees' ability to avail themselves of bona-fide purchaser status.

In Texas, prior to 2009, if a party pleaded a real-property claim, it could effectively encumber a property with a lis pendens notice until the underlying proceedings concluded without regard for the merits of the underlying claim. This approach had been criticized because it allowed real-property interests to be significantly burdened with no evidentiary support and with no showing that the notice of lis pendens was filed in good faith. *See, e.g.*, Herbert A. Janzen, *Texas Statutory Notice of Lis Pendens: A Deprivation of Property Interest without Due Process?*, 19 ST. MARY'S L.J. 377, 385 (1987) ("Under the [prior version of] the Texas statute, the only way a seller c[ould] remove the cloud on his title caused by a lis pendens notice [was] to post a bond or give an undertaking pursuant to the statute, or proceed to trial on the underlying suit and obtain a favorable judgment."). Recognizing that a lis pendens notice "produces a cloud on title which may devastate the marketability of the encumbered property," some states "enacted statutes requiring a trial court to determine, in a hearing on discharge, that the claim is probably valid, or that the proponent is likely to prevail in the action." Hon. David M. Gersten, *The Doctrine of Lis Pendens: the Need for a Balance*, 59 FLORIDA BAR J. 83 (June 1995) (citing CAL. CIV. PROC. CODE § 405.32 (West

17

1995) ("[T]he court shall order that the notice be expunged if the court finds that the claimant has not established by a preponderance of the evidence the probable validity of the real property claim."); NEV. REV. STAT. §14.015.3 (1993) (requiring party filing notice of lis pendens to establish it was "not brought in bad faith or for an improper motive" and that it "is likely to prevail in the action" or "has a fair chance of success on the merits in the action" and that harm from lifting the notice would be sufficiently serious); N.J. REV. STAT. §2A:15-7(b)(1995) ("If the court determines that there is a sufficient probability of final judgment in favor of the plaintiff, the notice of lis pendens shall be continued of record. . . . If the court fails so to determine, the court shall forthwith order the notice of lis pendens discharged of record.")).

In 2009, the Texas Legislature similarly amended section 12.0071 of the Texas Property Code to require a trial court to "order the notice of lis pendens expunged if the court determines that . . . the claimant fails to establish by a preponderance of the evidence the probable validity of the real property claim." Probable validity is not defined in the statute, but other jurisdictions have defined this phrase in the lis pendens expungement context to mean "where it is more likely than not that the plaintiff will obtain a judgment against the defendant on that claim." CAL. CIV. PROC. CODE § 481.190.

18

Cohen's Second Supplemental Notice of Lis Pendens was expunged under this new provision. The parties disagree about the effect of that expungement, which is governed by section 12.0071(f):

> (f) After a certified copy of an order expunging a notice of lis pendens has been recorded, the notice of lis pendens and any information derived from the notice:
>
> > (1) does not:
> >
> > > (A) constitute constructive or actual notice of any matter contained in the notice or of any matter relating to the proceeding;
> > >
> > > (B) create any duty of inquiry in a person with respect to the property described in the notice; or
> > >
> > > (C) affect the validity of a conveyance to a purchaser for value or of a mortgage to a lender for value; and
> >
> > (2) is not enforceable against a purchaser or lender described by Subdivision (1)(C), regardless of whether the purchaser or lender knew of the lis pendens action.

TEX. PROP. CODE § 12.0071(f).

Cohen urges us to interpret this provision to mean that expungement extinguishes only (1) constructive notice caused by the filing of the notice of lis pendens, and (2) actual notice derived by reading the notice of lis pendens. Thus, under Cohen's interpretation, if a party learns of a lis pendens or the underlying lawsuit other than by reading the actual lis pendens notice, the party has "actual notice" of that claim, defeating bona-fide purchaser status regardless of whether the lis pendens is expunged.

Sandcastle and NewBiss argue that Cohen's interpretation eliminates the benefit of—and is contrary to the purpose of—the expungement statute because it allows a party to burden title to property even when that party cannot meet the threshold requirement of adequately pleading and establishing the probable validity of an alleged real-property claim. We agree.

"We use definitions prescribed by the Legislature and any technical or particular meaning the words have acquired, but otherwise, we construe the statute's words according to their plain and common meaning unless a contrary intention is apparent from the context, or unless such a construction leads to absurd results." *FKM P'ship, Ltd. v. Bd. of Regents of Univ. of Houston Sys.*, 255 S.W.3d 619, 633 (Tex. 2008) (citing TEX. GOV'T CODE § 311.011; *Univ. of Tex. Sw. Med. Ctr. v. Loutzenhiser*, 140 S.W.3d 351, 356 (Tex. 2004)). We presume the Legislature intended a just and reasonable result by enacting the statute. TEX. GOV'T CODE § 311.021(3).

A notice of lis pendens is designed to put persons who might acquire the property on notice that there is a potential claim to the property. There are two methods to terminate a lis pendens. Anyone interested in a burdened property can petition for a "cancellation" of lis pendens if the court determines "the party seeking affirmative relief can be adequately protected by the deposit of money into court or by giving of an undertaking." TEX. PROP. CODE § 12.008. In other words,

20

without regard to the merits of a real property claim, a party can unburden real property by providing security in its place.

But section 12.0071—the provision at issue here—uses the word "expunge" rather than "cancel." Unlike section 12.008 (providing for cancellation based upon posting security), a court under 12.0071 must find that the plaintiff either did not plead a real-property claim or has not shown the probable validity of its claims before expungement is appropriate. "Expunge" means to "erase or destroy"; to "declare . . . null and outside the record," so that it "is noted in the original record as expunged, and redacted from all future copies." BLACK'S LAW DICTIONARY (10th ed. 2014). Once a notice of expungement has been properly filed, "the notice of lis pendens and any information derived from the notice" does not amount to constructive, actual, or inquiry notice about the underlying lawsuit, and is "not enforceable against a purchaser or lender . . . regardless of whether the purchaser or lender knew of the lis pendens action."

Cohen argues the concepts of actual and constructive notice are different and that expungement of a notice of lis pendens can operate only to extinguish constructive notice, but not actual notice (except the actual notice that comes from physically reading a lis pendens notice). We reject that argument because the plain language of section 12.0071 shows that—for purposes of establishing bona fide purchaser status—expungement of a lis pendens notice extinguishes *both* actual

and constructive notice. *See* TEX. PROP. CODE § 12.0071(f)(1)(A) ("After a certified copy of an order expunging a notice of lis pendens has been recorded, the notice of lis pendens and any information derived from the notice . . . does not . . . constitute constructive or *actual notice* of any matter contained in the notice or of any matter relating to the proceeding." (emphasis added)), § 12.0071(f)(2) ("After a certified copy of a notice of lis pendens has been recorded, the notice of lis pendens any information derived from the notice . . . is not enforceable against a purchaser. . . regardless of whether the purchaser . . . *knew of the lis pendens action*." (emphasis added)). What is less clear, however, is exactly what expungement extinguishes actual and constructive notice of.

The statute states that expungement extinguishes "notice of lis pendens and *any information derived from the notice*." (emphasis added). Our resolution of this appeal turns on what "any information derived from" means. Cohen advances a narrow interpretation of this provision, insisting that expungement of a lis pendens should have no effect on any actual notice unless the purchaser gained the actual notice from reading the notice of lis pendens. Under this interpretation, whether an expungement can remove the cloud of a lis pendens does not turn on whether the party encumbering the real property can demonstrate a probable right of recovery on an underlying real-property claim, but instead on details about

22

exactly how the purchaser seeking to rely on an expungement learns of the underlying claim.

For example, under Cohen's interpretation, if a potential purchaser first learns of a lawsuit involving a claim to real property by reading a properly filed notice of lis pendens in the real property records, then the potential seller's successfully moving to expunge that lis pendens—either before or after the purchaser came across the lis pendens notice—would restore that purchaser's ability to take the property as a bona-fide-purchaser.

The result would be different, however, if the day before inspecting the real property records, that same potential purchaser was told by a real estate agent showing the property:

> The seller told me that there is a lawsuit in which someone was claiming an interest in this property. The plaintiff in that suit filed a notice of lis pendens on the property, but the seller went to court and got that notice expunged, so everything is fine now.

Under Cohen's interpretation, the buyer told about the suit by the realtor could never take the property as a bona-fide purchaser, despite a trial court finding that the plaintiff in the underlying lawsuit failed to establish, by a preponderance of the evidence, the probable validity of the real-property claim.

The statutory provisions providing for expungement of lis pendens notices— the aim of which is to curtail burdening of real property pretrial, for lengthy periods, without evidentiary support—would be of little use if every case

23

necessitated inquiry into, and turned on, whether a purchaser physically read the lis pendens or was told about the lis pendens or the underlying lawsuit by another person. Read as a whole, the lis pendens and expungement scheme is designed to differentiate cases in which the proponent of the notice of lis pendens can demonstrate a probable right of recovery on an underlying real-property claim from cases in which the proponent cannot; nothing indicates that the legislature intended the determination of whether title to a property is encumbered to turn instead on whether each potential buyer learns of an underlying claim that is the subject of a lis pendens notice by literally reading the notice or by some other means.

We thus conclude that the more reasonable interpretation intended by the legislature is that a lawsuit identified in a notice of lis pendens does not preclude subsequent purchasers from proving bona-fide purchaser status if the trial court has expunged that lis pendens following a determination that the proponent has not shown the probable validity of the real-property claim. Unlike the dissent's interpretation of the statute, ours has the benefit of furthering the purpose of the statute and creating a bright-line rule.

The dissent criticizes our interpretation as too broad and argues that section 12.0071 should instead be interpreted to extinguish only notice that came from the notice of lis pendens itself or from information derived from that recorded notice.

It contends that our interpretation "imbu[es] an expungement of a notice of lis pendens with the claim-preclusive effect of a full-blown adverse judgment on the merits." The dissent acknowledges, as it must, that the statute expressly mandates such a result for some types of actual and constructive notice about the underlying lawsuit, but argues that result should not extend to other types of actual notice. In support of its interpretation, the dissent expresses a concern that "the procedural standard for expunging a notice of lis pendens is much lower than the standard that would apply to defeat the underlying claim on the merits." But, by the same token, a plaintiff's filing a notice of lis pendens wields power not available to a plaintiff in any other context, i.e., the ability to effectively completely encumber a defendant's property before any right to that property is litigated.[3]

Cohen does not argue that Sandcastle or NewBiss had notice of any legal claims other than those identified in his Second Supplemental Notice of Lis Pendens burdening the West Newcastle Property. He argues only that fact issues exist about whether Sandcastle's and NewBiss's knowledge about those claims came from the actual lis pendens or from other sources providing information about the claims and/or lis pendens. Because we have held that expunction of notices of lis pendens for failure to establish the probable validity of the underlying

---

[3]  We also note that expungement under section 12.0071 does not impact a plaintiff's ability to enforce a perfected lien against real property if its claim to the property meets the statutory prerequisites, nor does it impact the plaintiff's ability to recover monetary damages from the defendant.

25

claims effectively extinguishes "notice" of the claims identified in the notice of lis pendens, we overrule Cohen's first three issues in the Sandcastle appeal and the first three issues in the NewBiss appeal.

## THE EXPUNGEMENT

In issues four and seven related to the Sandcastle appeal and in issues four and seven related to the NewBiss appeal, Cohen argues that the trial court erred by expunging his Second Supplemental Notice of Lis Pendens, rendering the summary judgments in favor of Sandcastle and NewBiss erroneous. In his eighth issue in the NewBiss appeal, he complains that the trial court erred in expunging another notice of lis pendens he filed on Tract II of the West Newcastle property on November 14, 2012. Specifically, he argues that expunging his notices of lis pendens was improper because he established the probable validity of his real-property claims against the Dilick defendants in the underlying lawsuit.

Orders related to lis pendens are addressable by mandamus[4] and, in some situations, on direct appeal from the final judgment resolving the alleged real-

---

[4] *E.g.*, *First Nat'l Petroleum Corp. v. Lloyd*, 908 S.W.2d 23, 24–25 (Tex. App.— Houston [1st Dist.] 1995, orig. proceeding) ("Mandamus has been recognized as the appropriate remedy when issues have arisen concerning the issuance of notices of lis pendens."); *see also Flores v. Haberman*, 915 S.W.2d 477, 478 (Tex. 1995) (orig. proceeding) (granting mandamus relief from trial court's erroneously denial of motion to cancel notice of lis pendens without analysis of adequate remedy by appeal).

property claim for which the lis pendens gives notice.[5]  Neither of these situations is presented here.  Cohen raised the same arguments he makes here in the petition for writ of mandamus he filed, and we denied, when the trial court expunged his notices of lis pendens.  *See In re Cohen*, 01-11-00544-CV (Dec. 22, 2011).  And the underlying real-property claims against the Dilick defendant upon which the notices of lis pendens gave notice are still pending in in the trial court.  We will not consider Cohen's collateral challenge to the trial court's expungement orders in this direct appeal from severed summary judgments establishing Sandcastle's and NewBiss's bona-fide purchaser status.

We accordingly overrule Cohen's fourth and seventh issues in the Sandcastle appeal and his fourth, seventh, and eighth issues in the NewBiss appeal.

## SALES TO SANDCASTLE AND NEWBISS VOID?

In his fifth issues in both the Sandcastle and NewBiss appeals, Cohen argues that the trial court erred in granting summary judgment because even if Sandcastle and NewBiss were bona-fide purchasers, their purchases were void.  Specifically,

---

[5] *See In re Moody Nat'l Kirby Houston S, LLC*, 412 S.W.3d 570, 571 (Tex. App.—Houston [1st Dist.] 2013, orig. proceeding) (denying mandamus petition challenging trial court's denial of motion to expunge lis pendens because mandamus was filed after notice of appeal from final judgment resolving real-property claim in underlying proceeding rendering appeal from final judgment (into which interlocutory order denying expungement merged) an adequate remedy). *But see Nat'l City Bank of Indiana v. Ortiz*, 401 S.W.3d 867, 887 (Tex. App.—Houston [14th Dist.] 2013, pet. denied) (addressing merits of mandamus petition challenging denial of motion to expunge notice of lis pendens that was filed after notice of appeal filed from final disposition of underlying real-property dispute).

27

Cohen alleges that the sales to Sandcastle and NewBiss amounted to improper and illegal diversion of partnership property because Dilick took the sales proceeds for improper personal use, which violated his fiduciary duties and the Texas Penal Code.

Sandcastle and NewBiss argue that the transactions were not void. They dispute that Dilick's actions were improper or violated any law, and argue that—in any event—Dilick's actions were within the scope of his authority such that his misuse of sale proceeds would not void the sale. We agree that Cohen has not demonstrated that the sales were void.

Cohen does not dispute that Dilick was specifically authorized under the relevant partnership agreements to conduct transactions involving the West Newcastle property, including the authority to sell or encumber the property. In other words, Dilick did not exceed the scope of his authority by conveying the properties. The two cases Cohen cites for the proposition that we should nonetheless void the sales as being against public policy are inapposite and do not support his argument that a sale within an agent's authority to a third party is void if the agent involved in the sale later improperly diverts proceeds from the sale for an impermissible personal use. *See GNG Gas Sys, Inc. v. Dean*, 921 S.W.2d 421, 426–27 (Tex. App.—Amarillo 1996, writ denied); *Guaranty Bank (S. Oak Cliff Bank) v. Nat'l Surety Corp.*, 508 S.W.2d 928, 929 (Tex. Civ. App.—Dallas 1974,

28

writ ref'd n.r.e.). In *Guaranty Bank*, the court of appeals affirmed a summary judgment that the defendant was not liable for tortious interference of a contract because performance of that contract required the misappropriation of trust funds that would have violated public policy. 508 S.W.2d at 932–33. In *GNG Gas Systems, Inc.*, 921 S.W.2d at 427, the court articulated the general proposition that a corporate transaction in which an officer or director diverts assets of the corporation for his own use, "the transaction is presumptively fraudulent and void." The "transaction" that is subject to being voided, however, is the transaction that allegedly violated the fiduciary duty. Applying this general principle, and accepting Cohen's allegations as true, the voidable transaction here would not be the authorized sales to NewBiss and Sandcastle, but instead the one in which Dilick allegedly diverted funds.

Because Cohen has not demonstrated that the sales to Sandcastle and NewBiss were void, we overrule Cohen's fifth issues in both the Sandcastle and NewBiss appeals.

## CONSTITUTIONALITY

In Cohen's sixth issue in both the Sandcastle and NewBiss appeals, he argues that section 12.0071 of the Texas Property Code is unconstitutional. Specifically, he contends it violates the open courts provision of the Texas

29

Constitution, and his due process rights under both the United States and Texas Constitutions. Tex. Const. art. I, §13; U.S. CONST. amend. XIV, §1.

## A. Open Courts

The open-courts provision prohibits arbitrary or unreasonable legislative action that abrogates well-established, common-law remedies. *Lebohm v. City of Galveston*, 154 Tex. 192, 199 275 S.W.2d 951, 955 (1955) (op. on reh'g). It ensures that Texas citizens bringing common-law causes of action will not unreasonably be denied the right to redress in the courts. *Rose v. Doctor's Hosp.*, 801 S.W.2d 841, 843 (Tex. 1990).

We review the constitutionality of a statute de novo, *see Stockton v. Offenbach*, 336 S.W.3d 610, 614–15 (Tex. 2011), beginning with the presumption that the statute is constitutional. TEX. GOV'T CODE ANN. § 311.021(1) (West 2013); *Sax v. Votteler*, 648 S.W.2d 661 664 (Tex. 1983); *see also Methodist Healthcare Sys. of San Antonio, Ltd. v. Rankin*, 307 S.W.3d 283, 285 (Tex. 2010).

To establish an open-courts violation, Cohen must demonstrate that (1) the statute restricts a well-recognized, common-law cause of action (the well-recognized prong) and (2) the restriction is unreasonable or arbitrary when balanced against the Act's purpose (the balance prong). *Thomas v. Oldham*, 895 S.W.2d 352, 357 (Tex. 1995); *Sax*, 648 S.W.2d at 666. A statute does not violate the open courts provision of the Texas Constitution if there are adequate substitute

30

methods for obtaining redress. *Liggett v. Blocher*, 849 S.W.2d 846, 851 (Tex. App.—Houston [1st Dist.] 1993, no writ) ("In determining the restrictive effect of the statutory provision at issue, the court must also consider whether the legislature has avoided an unconstitutional result by providing a substitute remedy or by leaving a reasonable alternative at common law."). A statute may, however, violate the open-courts provision "when it makes a remedy by due course of law contingent on an impossible condition." *In re D.M.*, 191 S.W.3d 381, 391 (Tex. App.—Austin 2006, pet. denied).

Cohen argues that the procedures for expunging notices of lis pendens under section 12.0071 are "unreasonably truncated," and may cause a person filing a notice of lis pendens to "forever lose[] its ability to obtain rescission of the wrongful conveyance or to impose a constructive trust on the property wrongfully conveyed." In other words, Cohen does not argue that he has lost the right to pursue a particular cause of action, but instead argues that—by requiring him to comply with section 12.0071—he may lose the "ability to obtain remedies (i.e., retrieve the property wrongfully conveyed) provided [him] under common law, thereby restricting, in a rather profound way, [his] common law claims."

We reject Cohen's open-courts challenge because he has not been deprived of a common law right. Cohen has not been prevented from suing for damages under the theories of breach of fiduciary duty, fraud, constructive fraud, and breach

31

of contract. Cohen's challenge is directed only at the statutory provision allowing for expungement of a lis pendens if the requisite evidentiary showing is not met. TEX. PROP. CODE §12.0071(c)(2). A lis pendens is not a cause of action or a lien; it is a means of providing constructive notice of an alleged real property claim. TEX. PROP. CODE §13.004(a). Cohen was allowed, by statute, to file a notice of lis pendens to serve as constructive notice of his claims. He was given the opportunity to maintain that notice of lis pendens by demonstrating the probable validity of his real property claim. He had the opportunity to challenge, in an original proceeding in this Court, the trial court's determination that he had not demonstrated the probable validity of his real property claim. He has not established an open courts violation. *Cf. Francis v. Coastal Oil & Gas, Inc.*, 130 S.W.3d 76, 92 (Tex App—Houston [1st Dist.] 2003, no pet.) (holding that statute eliminating liability of property owner for independent contractor's injuries unless the property owner exercises sufficient control over the work and has knowledge of the danger does not violate the open courts provision because it only "delineates the evidentiary showing a plaintiff must meet to prevail on a claim of negligence against a property owner"); *Freedman v. Univ. of Houston*, 110 S.W.3d 504, 508 (Tex. App.—Houston [1st Dist.] 2003, no pet.) (holding that statute requiring legislative consent to sue university for breach of contract did not violate open courts because it does not eliminate right to sue).

**B. Due Process**

Finally, Cohen argues that section 12.0071 violates his procedural and substantive due process rights.

Procedural due process requires reasonable notice and the opportunity to be heard at a meaningful time and in a meaningful manner. *Univ. of Tex. Med. Sch. v. Than*, 901 S.W.2d 926, 930 (Tex. 1995). The trial court held a hearing on the motion to expunge Cohen's Second Supplemental Notice of Lis Pendens. The parties filed evidence and the court accepted testimony at the hearing. Other than his claims that the expungement procedure is "truncated" such that the court should err "on the side of preserving the status quo," Cohen cites no authority in support of his argument that he was deprived of procedural due process.

Cohen likewise does not articulate how section 12.0071's application to him violates substantive due process. He argues only that the state needed "a compelling interest to curtail" his property rights, and "must do it as narrowly as possible." Cohen has not provided argument or authority to overcome the presumption that section 12.0071 is constitutional.

We overrule Cohen's sixth issue in both the Sandcastle and NewBiss appeals.

## CONCLUSION

We affirm the trial court's judgments.

33

Sherry Radack<br>
Chief Justice

Panel consists of Chief Justice Radack and Justices Massengale and Huddle.

Justice Massengale, dissenting.